Matter of Zakariya HH. (Ahmed II.) (2021 NY Slip Op 01540)





Matter of Zakariya HH. (Ahmed II.)


2021 NY Slip Op 01540


Decided on March 18, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 18, 2021

530659

[*1]In the Matter of Zakariya HH., Alleged to be an Abandoned Child. Broome County Department of Social Services, Respondent; Ahmed II., Appellant.

Calendar Date: February 9, 2021

Before: Garry, P.J., Egan Jr., Pritzker, Reynolds Fitzgerald and Colangelo, JJ. 


Lisa K. Miller, McGraw, for appellant.
Broome County Department of Social Services, Binghamton (Kuredin V. Eytina of counsel), for respondent.
Susan B. McNeil, Brooktondale, attorney for the child.



Egan Jr., J.
Appeal from an order of the Family Court of Broome County (Pines, J.), entered October 1, 2019, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be abandoned, and terminated respondent's parental rights.
Respondent is the father of the subject child (born in 2016). When the child was born in December 2016, the father was incarcerated — with a then-anticipated release date of August 2020 — and was not aware of the child's birth or that he was the child's father. Three days after the child's birth, before she or the mother had left the hospital, the child was removed from the mother's care, with the mother's consent, and placed in petitioner's custody based upon concerns of derivative neglect (see Family Ct Act § 1021).[FN1] Respondent's paternity was subsequently established in June 2017 and he was thereafter provided written notification that the child was in foster care and, as an identified resource, was further provided with copies of the child's permanency hearing reports and was subsequently able to attend two of the child's permanency hearings. Since the child's removal in December 2016, she has remained in petitioner's custody in the continuous care of the foster parents, who have identified themselves as an adoptive resource.
In April 2019, petitioner commenced this proceeding seeking to terminate respondent's parental rights on the ground of abandonment, alleging that, in the six months preceding its petition, respondent had no contact or communication with the child and no significant contact with petitioner, petitioner's caseworker or the foster parents to inquire about the child's welfare, nor had he been prevented or discouraged from making such contact. Following a fact-finding hearing, Family Court determined that respondent had abandoned the child and terminated his parental rights, freeing the child for adoption. Respondent appeals, and we affirm.
Respondent contends that Family Court erred in determining that he had abandoned the child. We disagree. A parent may be determined to have abandoned a child and his or her parental rights terminated when, in the six months preceding the filing of the petition, the "parent evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency" (Social Services Law § 384-b [5] [a]; see Matter of Damien D. [Ronald D.], 176 AD3d 1411, 1411 [2019]; Matter of Kayson R. [Christina S.], 166 AD3d 1346, 1346 [2018]). A parent, even one who is incarcerated, is presumed to be able to maintain contact with his or her child (see Matter of Damien D. [Ronald D.], 176 AD3d at 1411-1412; Matter of Isaiah OO. [Benjamin PP.], 149 AD3d 1188, 1189 [2017], lv denied 29 NY3d 913 [2017]). In turn, "[o]nce petitioner establishes that a parent [*2]failed to maintain sufficient contact with a child for the statutory period, the burden shifts to the parent to establish that he or she maintained sufficient contact, was unable to do so, or was discouraged or prevented from doing so by petitioner" (Matter of Isaiah OO. [Benjamin PP.], 149 AD3d at 1190 [internal quotation marks, ellipsis and citations omitted]; see Matter of Dakota W. [Kimberly X.], 189 AD3d 2004, 2007 [2020]).
The testimony at the fact-finding hearing demonstrated that, in the six months preceding the subject petition, respondent made no contact with either the child, petitioner's case manager, the caseworker for the foster care agency or the child's foster parents to inquire about the child's welfare. Contrary to respondent's assertion, "petitioner was under no obligation to exercise diligent efforts to encourage respondent to establish a relationship with his child" (Matter of Maria E. [Jermaine D.], 94 AD3d 1357, 1358 [2012]; see Matter of Gabriella I. [Jessica J.], 79 AD3d 1317, 1318 [2010], lv denied 16 NY3d 704 [2011]; Matter of Arianna SS., 275 AD2d 498, 499 [2000]). Nevertheless, the case manager testified that she sent respondent letters notifying him that the child was in foster care and that he had certain rights and responsibilities with regard thereto and provided him with her contact information as well as that of the foster care agency.[FN2] Despite this notification, the case manager, caseworker and the child's foster mother all reported that they had no contact of any kind with respondent in the six months preceding the filing of the instant petition. The foster mother confirmed that the child had not received any letters, cards, gifts or other electronic communications from respondent during the relevant statutory time period, and no evidence was presented that the case manager, caseworker or foster parents prevented or discouraged respondent from making such contact. Based on the foregoing, petitioner established, by clear and convincing evidence, its initial burden on the petition, shifting the burden to respondent to establish that he maintained sufficient contact with the child or was otherwise unable or prevented from doing so (see Matter of Hayden II. [Renee II.—Devan JJ.], 135 AD3d 997, 999 [2016], lv denied 27 NY3d 904 [2016]).
In opposition, respondent testified on his own behalf and acknowledged that, in the six months preceding the petition, he had no contact whatsoever with the child; however, he averred that petitioner had not provided him with the necessary contact information for the case manager, the caseworker or the foster parents. This assertion, however, is belied by his own testimony, wherein he acknowledged not only having received petitioner's letter notifying him that the child was in foster care, but also two permanency hearing reports regarding the child that also contained the requisite contact information. He also attended, along with his assigned counsel, two of the child's permanency [*3]hearings, the first of which was conducted in August 2018, nearly eight months prior to the filing of the instant petition. Additionally, despite his contention that he had not been provided the necessary contact information, in further self-contradictory fashion, he nevertheless testified that he had, in fact, sent the caseworker two letters during the relevant time period requesting, among other things, visitation with the child. Other than his self-serving and unsupported claims, however, he provided no proof that such letters were ever sent and the case manager and caseworker denied ever receiving same. Based on the foregoing, we find that Family Court was within its discretion to resolve these credibility issues against respondent. Moreover, even assuming that respondent had sent these two letters, such contact was "too infrequent, sporadic and insubstantial to defeat petitioner's showing of abandonment" (Matter of Damien D. [Ronald D.], 176 AD3d at 1412; see Matter of Colby II. [Chalmers JJ.], 140 AD3d 1484, 1485 [2016]). Accordingly, having reviewed the evidence at the fact-finding hearing and giving the appropriate deference to Family Court's credibility determinations (see Matter of Gabriella I. [Jessica J.], 79 AD3d at 1319), we find that there is ample proof in the record establishing that respondent abandoned the child by failing to make any effort to contact the child or inquire about her welfare during the relevant six-month period, and his parental rights were appropriately terminated (see Matter of Damien D. [Ronald D.], 176 AD3d at 1413; Matter of Isaiah OO. [Benjamin PP.], 149 AD3d at 1191; Matter of Dustin JJ. [Clyde KK.], 114 AD3d 1050, 1051 [2014], lv denied 23 NY3d 901 [2014]).
Garry, P.J., Pritzker, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The derivative neglect stems from the mother's failure to comply with petitioner's recommendations that she obtain mental health counseling, stable housing and address her ongoing issues with substance abuse and domestic violence, with regard to a prior allegation of neglect involving one of her older children.

Footnote 2: The child's caseworker testified that she also received a copy of this letter from petitioner and confirmed that it contained her contact information.