Matter of Micah L. (Rachel L.) (2021 NY Slip Op 01533)





Matter of Micah L. (Rachel L.)


2021 NY Slip Op 01533


Decided on March 18, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 18, 2021

529143

[*1]In the Matter of Micah L., Alleged to be an Abandoned Child. Broome County Department of Social Services, Respondent; Rachel L. et al., Appellants.

Calendar Date: February 11, 2021

Before: Garry, P.J., Egan Jr., Lynch, Clark and Pritzker, JJ.


Alena E. Van Tull, Binghamton, for Rachel L., appellant.
Larisa Obolensky, Delhi, for Robert L., appellant.
Broome County Department of Social Services, Binghamton (Kuredin V. Eytina of counsel), for respondent.
Susan McNeil, Brooktondale, attorney for the child.



Clark, J.
Appeal from a corrected order of the Family Court of Broome County (Connerton, J.), entered May 6, 2019, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be abandoned, and terminated respondents' parental rights.
Respondent Rachel L. (hereinafter the mother) and respondent Robert L. (hereinafter the father) are the parents of a child (born in 2011) who is autistic and nonverbal. In May 2018, petitioner commenced this proceeding seeking to terminate respondents' parental rights on the ground that they had abandoned the child during the six months preceding the filing of the petition. Following a fact-finding hearing, Family Court adjudicated the child to be abandoned within the meaning of Social Services Law § 384-b (5) (a) and scheduled a dispositional hearing. Following that dispositional hearing, Family Court terminated respondents' parental rights and freed the child for adoption. Respondents appeal.[FN1]
Respondents argue that Family Court erred in determining that they abandoned the child within the meaning of Social Services Law § 384-b (5) (a). Family Court may terminate parental rights based upon a finding of abandonment if the petitioning agency proves by clear and convincing evidence that, during the six months preceding the petition's filing, the parent "evince[d] an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency" (Social Services Law § 384-b [5] [a]; see Social Services Law § 384-b [4] [b]; Matter of Mason H. [Joseph H.], 31 NY3d 1109, 1110 [2018]). A parent is presumed to be able to maintain contact with his or her child, even if he or she is incarcerated (see Social Services Law § 384-b [5] [a]; Matter of Mason H. [Joseph H.], 31 NY3d at 1110; Matter of Dustin JJ. [Clyde KK.], 114 AD3d 1050, 1051 [2014], lv denied 23 NY3d 901 [2014]). Once the petitioning agency establishes that the parent failed to maintain contact with his or her child, the burden shifts to "the parent to prove an inability to maintain contact or that he or she was prevented or discouraged from doing so by the petitioning agency" (Matter of Jackie B. [Dennis B.], 75 AD3d 692, 693 [2010]; see Matter of Colby II. [Sheba II.], 145 AD3d 1271, 1272 [2016]).
The evidence presented at the fact-finding hearing established that the mother was scheduled to have biweekly supervised visits with the child, provided that she confirmed her attendance by a certain time and passed a drug test prior to the visit. However, the testimony demonstrated that the mother did not avail herself of such visits and ultimately had only one hour of supervised visitation with the child during the relevant six-month period (November 8, 2017 through May 8, 2018). Although the mother attempted an additional visit with [*2]the child in March 2018, she tested positive for methamphetamines prior to the visit and therefore did not satisfy petitioner's preconditions for visitation. The evidence established that, aside from the one-hour visit, the only other contact that the mother had with the child was a single phone call. The mother did not send the child any letters, cards, pictures or gifts. Petitioner's caseworker testified that the mother contacted her on four occasions, but that she did not inquire about the child during these calls, and that the mother attended two court proceedings, one of which was followed by a service plan review for the child. Upon review of the record, including the foregoing proof, we agree with Family Court that petitioner presented clear and convincing evidence of the mother's failure to maintain contact with the child and/or petitioner during the statutory period and that the minimal contact that she did have with the child and/or petitioner was too infrequent, sporadic and insubstantial to defeat the showing of abandonment (see Matter of Damien D. [Ronald D.], 176 AD3d 1411, 1412 [2019]; Matter of Jamal B. [Johnny B.], 95 AD3d 1614, 1615-1616 [2012], lv denied 19 NY3d 812 [2012]).
The mother failed to establish that she was unable to maintain contact with the child and/or petitioner or that petitioner prevented or discouraged her from doing so. The mother testified that, during the relevant period, she was hospitalized for two separate, one-week periods and that she also attended an inpatient drug rehabilitation program for roughly two weeks. She, however, did not show that her hospitalizations or her participation in the rehabilitation program so permeated her life as to make contact with the child or petitioner infeasible (see Matter of Jamal B. [Johnny B.], 95 AD3d at 1616; Matter of Alex MM., 260 AD2d 675, 676 [1999]). Further, contrary to the mother's contention, petitioner did not prevent or discourage her from maintaining contact with the child by requiring that she pass a drug screen prior to visiting with the child; rather, such requirement constituted a reasonable precondition to visitation (see e.g. Matter of Joshua M. [Brittany N.], 167 AD3d 1268, 1270 [2018]; Matter of Alec B., 34 AD3d 1110, 1111 [2006]). Moreover, the requirement did not impede her ability to communicate with the child or petitioner by phone or in writing. Thus, upon review of the evidence, we find that a sound and substantial basis exists in the record to support the conclusion that the mother abandoned the child during the statutory period (see Matter of Kayson R. [Christina S.], 166 AD3d 1346, 1347-1348 [2018]).
We make a similar finding with respect to the father. Although the father was largely incarcerated during the relevant six-month period, he did not have any contact with the child whatsoever. He did not seek to visit with the child, call the child or otherwise communicate with the child by sending letters, cards, pictures or gifts[*3]. Additionally, despite having met with petitioner's caseworker and having received correspondence from the social worker involved, the father did not contact the caseworker or the social worker. The father failed to present any proof establishing that he was unable to maintain contact with the child and/or petitioner or that he was prevented or discouraged from doing so (see Matter of Joshua M. [Brittany N.], 167 AD3d at 1271; Matter of Colby II. [Chalmers JJ.], 140 AD3d 1484, 1486 [2016]). Accordingly, there is no basis upon which to disturb Family Court's finding that the father abandoned the child (see Matter of Isaiah OO. [Benjamin PP.], 149 AD3d 1188, 1190-1191 [2017], lv denied 29 NY3d 913 [2017]).
The mother also challenges Family Court's determination to terminate her parental rights after the dispositional hearing.[FN2] The evidence presented at the dispositional hearing established that the mother's contact with the child and/or petitioner had only modestly increased since May 8, 2018 — the date on which the relevant six-month period had expired. Moreover, at the time of the dispositional hearing in April 2019, the mother was incarcerated on a violation of probation following her relapse into drug use. Any possibility of reunifying the child with the mother was dependent upon the mother enrolling in and successfully completing a drug treatment program following her eventual release from incarceration in or around August 2019. Although the mother asserts that Family Court should have entered a suspended judgment to allow her to complete her term of incarceration and obtain drug treatment, a suspended judgment is not a permissible disposition following a finding of abandonment (see Matter of Dustin JJ. [Clyde KK.], 114 AD3d at 1052; Matter of Carter A. [Jason A.], 111 AD3d 1181, 1183 [2013], lv denied 22 NY3d 862 [2014]). Upon consideration of the foregoing, as well as the child's need for permanence, we find that a sound and substantial basis exists in the record to support Family Court's determination that a termination of parental rights was in the child's best interests (see Matter of Kayson R. [Christina S.], 166 AD3d at 1349-1350; Matter of Jackie B. [Dennis B.], 75 AD3d at 694-695).
Respondents' remaining contentions, to the extent not addressed herein, have been examined and found to be lacking in merit.
Garry, P.J., Egan Jr., Lynch and Pritzker, JJ., concur.
ORDERED that the corrected order is affirmed, without costs.



Footnotes

Footnote 1: The attorney for the child, like petitioner, argues that Family Court's order should be affirmed.

Footnote 2: Family Court was not required to conduct a dispositional hearing and instead could have terminated respondents' parental rights following its abandonment finding (see Social Services Law § 384-b [4] [b]; [5] [a]). However, in an exercise of discretion, Family Court opted to conduct a dispositional hearing (see Matter of Kayson R. [Christina S.], 166 AD3d 1346, 1348 n 5 [2018]).