Matter of Khavonye FF. (Latasha EE.) (2021 NY Slip Op 05753)





Matter of Khavonye FF. (Latasha EE.)


2021 NY Slip Op 05753


Decided on October 21, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:October 21, 2021

531439
[*1]In the Matter of Khavonye FF., Alleged to be an Abandoned Child. Commissioner of the Schenectady County Department of Social Services, Respondent; Latasha EE., Appellant. (And Another Related Proceeding.)

Calendar Date:September 15, 2021

Before:Garry, P.J., Egan Jr., Lynch, Aarons and Reynolds Fitzgerald, JJ.

Michelle I. Rosien, Philmont, for appellant.
Christopher H. Gardner, County Attorney, Schenectady (Sarah Petraccione of counsel), for respondent.
Veronica Reed, Schenectady, attorney for the child.



Egan Jr., J.
Appeal from an order of the Family Court of Schenectady County (Blanchfield, J.), entered February 21, 2020, which, among other things, granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be abandoned, and terminated respondent's parental rights.
Respondent is the mother of a child (born in 2011) who has been in petitioner's care and custody since December 2017 when she was removed from respondent's care due to allegations of alcohol abuse and homelessness.[FN1] In August 2019, petitioner commenced this proceeding to terminate respondent's parental rights on the ground of abandonment. Following a fact-finding hearing, Family Court determined that respondent had abandoned the child and terminated her parental rights.[FN2] Respondent appeals, and we reverse.[FN3]
"A finding of abandonment is warranted when it is established by clear and convincing evidence that the parent failed to visit or communicate with the child or the petitioning agency during the six-month period immediately prior to the filing of the abandonment petition, although able to do so and not prevented or discouraged from doing so by petitioner" (Matter of Joseph D. [Joseph PP.], 193 AD3d 1290, 1291 [2021] [internal quotation marks and citations omitted]; see Social Services Law § 384-b [5] [a]; Matter of Mason H. [Joseph H.], 31 NY3d 1109, 1110 [2018]). It is presumed that a parent has the ability to visit and/or communicate with his or her child and, therefore, "[o]nce the petitioning agency establishes that the parent failed to maintain contact with his or her child, the burden shifts to the parent to prove an inability to maintain contact or that he or she was prevented or discouraged from doing so by the petitioning agency" (Matter of Micah L. [Rachel L.], 192 AD3d 1344, 1344 [2021] [internal quotation marks and citation omitted]; see Social Services Law § 384-b [5] [a]; Matter of Joshua M. [Brittany N.], 167 AD3d 1268, 1269 [2018]).
The only evidence introduced by petitioner at the fact-finding hearing was the testimony of petitioner's caseworker. The caseworker, who was assigned to respondent's case in October 2018, testified that respondent was granted supervised visitation with the child every other week, to be supervised by Northeast Parent & Child Society, which required respondent to confirm her attendance with Northeast staff on the day of each scheduled visitation. The caseworker testified that, in the six-month period preceding the filing of the subject abandonment petition — which ran from February 27, 2019 to August 27, 2019 — respondent only exercised her supervised visitation on three occasions, once in March 2019, once in April 2019 and once in May 2019.[FN4] According to the caseworker, respondent did not provide her with any letters or gifts to give to the child during this time. The caseworker, however, only observed two of these visitations, each for only a limited period of time, during [*2]which she acknowledged that respondent brought snacks for the child. Respondent was otherwise precluded from making any other attempts to contact the child — i.e., telephone calls — outside of her scheduled supervised parenting time. The caseworker further acknowledged that, in June 2019, respondent was hospitalized with an injury that required emergency brain surgery, which prevented her from exercising one of her scheduled visitations that month, and respondent subsequently executed a medical release so that petitioner could verify same. Further, although the caseworker initially indicated that she had not had any contact with respondent since May 2019, during cross-examination she indicated that respondent had, in fact, called her one or two times during the relevant time period.
Petitioner, meanwhile, offered no documentary evidence in support of its petition memorializing any of the various attempts that either petitioner or Northeast made to contact respondent during the subject time period [FN5] and did not offer testimony from the staff at Northeast who were responsible for coordinating and/or supervising respondent's visitations. Accordingly, on the record before us, we find that petitioner failed to meet the burden of establishing, by clear and convincing evidence, that respondent's conduct evinced an intent to forgo her parental rights by failing to visit the child and/or communicate with the child or agency during the six months preceding the petition (see Matter of Mason H. [Joseph H.], 31 NY3d at 1110; Matter of Darrell J.D.J. [Kenneth R.], 156 AD3d 788, 789-790 [2017]; Matter of Elegant R.C., 60 AD3d 1386, 1386 [2009]; Matter of Adams H., 28 AD3d 213, 213-214 [2006]; Matter of Jeffrey M., 283 AD2d 974, 975 [2001]; compare Matter of Micah L. [Rachel L.], 192 AD3d at 1344-1345; Matter of Joshua M. [Brittany N.], 167 AD3d at 1269).[FN6]
Even assuming, without deciding, that petitioner made a prima facie showing that respondent failed to maintain adequate contact with the child during the requisite time period, petitioner failed to controvert respondent's testimony in opposition, wherein respondent indicated that, during visitations, she provided the child with shoes, clothing, toys, coloring and educational books and cards, attended service plan reviews, notified petitioner of her June 2019 injury and attempted to reschedule certain missed visitation as a result thereof. Respondent further indicated that, during the summer of 2019, she repeatedly, albeit unsuccessfully, attempted to contact Northeast caseworkers to exercise her scheduled visitation. Accordingly, under the circumstances, we find that Family Court should have dismissed the petition (see Matter of Mason H. [Joseph H.], 31 NY3d at 1110; compare Matter of Zakariya HH. [Ahmed II.], 192 AD3d 1361, 1364 [2021], lv denied 37 NY3d 905 [2021]).
Garry, P.J., Lynch, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, and [*3]petition dismissed.



Footnotes

Footnote 1: The child was removed from respondent's home in March 2016 (see Family Ct Act § 1022) following her relapse with alcohol and her impending incarceration for violating the terms of her parole.

Footnote 2: Petitioner also commenced an abandonment proceeding against the father — which was litigated at the same fact-finding hearing — and, following the hearing, Family Court determined that the father had abandoned the child within the meaning of Social Services Law § 384-b and terminated his parental rights. Petitioner also commenced a permanent neglect proceeding against respondent; however, said petition was not pursued as part of the subject fact-finding hearing.

Footnote 3: "The attorney for the child did not file a notice of appeal and, therefore, any affirmative relief requested beyond what [respondent] seeks is not properly before us" (Matter of Janeen MM. v Jean-Philippe NN., 183 AD3d 1029, 1030 n [2020] [citation omitted], lv dismissed 35 NY3d 1079 [2020]).

Footnote 4: Respondent did attend scheduled visitations in January 2019 and February 2019.

Footnote 5: Respondent filed discovery demands on petitioner prior to the fact-finding hearing requesting, among other things, notes from petitioner's caseworker. Petitioner represented that only one witness was going to be called and there were no relevant notes in that regard. During the caseworker's testimony, however, she indicated that she had received notes from Northeast caseworkers detailing their contacts with respondent and later refreshed her memory from a note that listed the dates that respondent had visited the child.

Footnote 6: Notably, at the fact-finding hearing, the attorney for the child provided no opening statement, did not present a case and declined the opportunity to submit a written closing statement following conclusion of the hearing. Thus, given the lack of testimony from Northeast caseworkers, Family Court had little, if any, insight into the quality of respondent's visitations with the child, the nature of the relationship/bond between respondent and the child or the preferences of the child — who was eight years old at the time of the hearing — regarding respondent.