Matter of Kihona U. (Britian MM.) (2021 NY Slip Op 07328)





Matter of Kihona U. (Britian MM.)


2021 NY Slip Op 07328


Decided on December 23, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 23, 2021

531692
[*1]In the Matter of Kihona U., Alleged to be an Abandoned Child. Chemung County Department of Social Services, Respondent; Britian MM., Appellant.

Calendar Date:November 18, 2021

Before:Garry, P.J., Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Christopher Hammond, Cooperstown, for appellant.
M. Hyder Hussain, County Attorney, Elmira (Mark H. Smith of counsel), for respondent.
Pamela B. Bleiwas, Ithaca, attorney for the child.



Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of Chemung County (Rich Jr., J.), entered April 23, 2020, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be abandoned, and terminated respondent's parental rights.
Respondent is the father of the subject child (born in 2018), who has been in petitioner's custody since her birth. Respondent was adjudicated to be the father of the child in March 2019. In September 2019, petitioner commenced this proceeding to terminate respondent's parental rights based on abandonment. Following a fact-finding hearing, Family Court determined that respondent had abandoned the child and terminated his parental rights. Respondent appeals.
"A finding of abandonment is warranted when it is established by clear and convincing evidence that the parent failed to visit or communicate with the child or the petitioning agency during the six-month period immediately prior to the filing of the abandonment petition, although able to do so and not prevented or discouraged from doing so by petitioner" (Matter of Joseph D. [Joseph PP.], 193 AD3d 1290, 1291 [2021] [internal quotation marks and citation omitted]; see Social Services Law § 384-b [5] [a]). "A parent's ability to visit and/or communicate with his or her child is presumed, and once a failure to do so is established, the burden is upon the parent to prove an inability to maintain contact or that he or she was prevented or discouraged from doing so by the petitioning agency" (Matter of Max HH. [Kara FF.], 170 AD3d 1456, 1459 [2019] [internal quotation marks and citations omitted]).
As the petition was filed on September 11, 2019, the operative six-month period is March 11, 2019 to September 11, 2019. Even assuming, arguendo, that the six-month period is as respondent proposes — March 12, 2019 to September 12, 2019 — the record establishes that petitioner met its initial burden of proving by clear and convincing evidence that, during the relevant six-month period, respondent did not visit, contact or otherwise communicate with the child. In fact, any visitation that respondent had with the child only occurred after the filing of the petition, with the first visitation occurring on October 9, 2019. Thus, the burden shifted to respondent to demonstrate that he maintained sufficient contact, was unable to do so or was discouraged or prevented from doing so by petitioner (see Matter of Kaitlyn E. [Lyndsay E.], 75 AD3d 695, 696 [2010]).
Respondent does not claim that he had any meaningful contact with the child during the relevant six-month period.[FN1] Instead, he contends that his lack of contact was solely due to petitioner's delay in commencing visitation. In that regard, "petitioner had no obligation to arrange visitation during the six-month period at issue" (Matter of Tasha B., 240 AD2d 778, 780 [1997]; see Matter of Erving BB. [Lynette EE.], 111 AD3d 1102, 1104 [2013]). In fact, respondent [*2]does not claim, nor did he present any evidence, that he ever contacted petitioner seeking visitation or that he was rebuffed in his attempts to do so.[FN2] Rather, the evidence shows that between March 2019 and July 2019, petitioner made multiple attempts and arrangements for respondent to meet with the agency to ascertain respondent's plan for the child. However, respondent failed to appear at each meeting. Eventually, in August 2019, petitioner and respondent met and respondent made his intentions known that he wished to visit the child. Thereafter, petitioner contacted respondent twice seeking to schedule visitation. Despite petitioner's efforts, the first visitation could not be scheduled until after the relevant time period expired.[FN3] Based on the record, there is no evidence to support respondent's contention that petitioner delayed arranging visitations with the child. In contrast, the evidence demonstrates that petitioner made numerous efforts to arrange visitations with respondent and the child during the relevant six-month period (see Matter of Jazmyne OO. [Maurice OO.], 111 AD3d 1085, 1087 [2013]; Matter of Arianna I. [Roger I.], 100 AD3d 1281, 1284-1285 [2012]; Matter of Kaitlyn E. [Lyndsey E.], 75 AD3d at 696). Accordingly, we discern no basis to disturb Family Court's finding that respondent abandoned the child.
Garry, P.J., Lynch, Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The foster parent testified that she and respondent had brief, unplanned and unarranged contacts two or three times at the school where both of their children attended, at which times respondent would say "hi" to the child.

Footnote 2: The foster parent testified that respondent asked her about visitation during one of their chance meetings at school, and she explained that he must contact petitioner to make such arrangements.

Footnote 3: Notably, even had petitioner not been forced to reschedule the first visitation, it still would not have taken place during the operative period.