Matter of Daniel OO. (William BB.--Faith OO.) (2021 NY Slip Op 07326)





Matter of Daniel OO. (William BB.--Faith OO.)


2021 NY Slip Op 07326


Decided on December 23, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 23, 2021

531486
[*1]In the Matter of Daniel OO., an Infant. William BB. et al., Respondents; Faith OO., Appellant.

Calendar Date:November 18, 2021

Before:Garry, P.J., Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Karen R. Crandall, Schenectady, for appellant.
Christine Nicolella, Schenectady, for respondents.
Alexandra G. Verrigni, Rexford, attorney for the child.



Lynch, J.
Appeal from an order of the Family Court of Schenectady County (Burke, J.), entered March 2, 2020, which granted petitioner's application, in a proceeding pursuant to Domestic Relations Law article 7, to determine that respondent's consent was not required for the adoption of her child.
Respondent (hereinafter the mother) is the mother of the subject child (born in 2013). Petitioners are the child's paternal grandparents (hereinafter collectively referred to as the grandparents). The child was placed in the care of the grandparents two days after his birth upon the filing of neglect petitions. A May 2014 custody order later awarded the grandparents physical custody of the child, with legal custody shared jointly between them, the mother and the child's father, Marcello AA. (hereinafter the father). The child has lived with the grandparents continuously since being placed in their care.
In August 2017, during the course of a paternity proceeding, the mother filed a petition pursuant to Family Ct Act article 6 seeking visitation with the child, updates about his well-being and inclusion in decision-making. That petition was subsequently withdrawn in April 2018 following the mother's incarceration. Shortly thereafter, the grandparents filed a petition under Domestic Relations Law article 7 seeking to adopt the child. While the grandparents' petition was pending, the mother filed another petition in the course of the paternity proceeding seeking modification of the prior order of custody to obtain a defined schedule of parenting time. The mother's modification petition was dismissed in April 2019 for failure to state a change in circumstances.
On August 16, 2019, the grandparents withdrew their initial adoption petition and commenced the instant proceeding seeking the same. A fact-finding hearing ensued, following which Family Court granted the petition and released the child for adoption. As relevant here, the court found that the grandparents had established, by clear and convincing evidence, that the mother evinced an intent to forgo her parental rights by failing to maintain consistent contact with the child for a period of at least six months prior to the filing of the instant proceeding and, because the mother failed to establish an inability to engage in such contact, her consent to the adoption was not required.[FN1] The mother appeals.
The grandparents, as the persons seeking to adopt the child, bore the "heavy burden" of proving, by clear and convincing evidence, that the mother forfeited her right to consent to the adoption by abandoning the child under Domestic Relations Law § 111 (2) (a) (Matter of Khrystopher EE. [David FF.—Michael EE.], 182 AD3d 672, 673 [2020]; see Matter of Blake I. [Richard H.—Neimiah I.], 136 AD3d 1190, 1191 [2016]). Abandonment may be established by evidence that the parent has "'evince[d] an intent to forego his or her parental or custodial rights and obligations as manifested by his or her failure [*2]for a period of six months to visit the child and communicate with the child or person having legal custody of the child, although able to do so'" (Matter of Khrystopher EE. [David FF.—Michael EE.], 182 AD3d at 673, quoting Domestic Relations Law § 111 [2] [a]; see Matter of Lori QQ. v Jason OO., 118 AD3d 1084, 1084 [2014], lv denied 23 NY3d 909 [2014]). "Abandonment, as it pertains to adoption, relates to such conduct on the part of a parent as evinces a purposeful ridding of parental obligations and the foregoing of parental rights — a withholding of interest, presence, affection, care and support" (Matter of Corey L v. Martin L, 45 NY2d 383, 391 [1978]). Upon establishing that the parent's consent to adoption is not required, "the burden shifts to the parent to demonstrate sufficient contact or an inability to engage in such contact" (Matter of Lori QQ. v Jason OO., 118 AD3d at 1084 [internal quotation marks and citation omitted]; accord Matter of Nathon O., 55 AD3d 995, 996 [2008], lv denied 11 NY3d 714 [2008]; Matter of Morgaine JJ., 31 AD3d 931, 932 [2006]).
The grandparents presented evidence that the child came into their care two days after his birth and, at the time of the fact-finding hearing, had been residing with them for approximately six years. Despite the fact that petitioner Marilyn BB. (hereinafter the grandmother) maintained the same phone number since before the child's birth, the grandparents both confirmed that, in the six-month period preceding the filing of the adoption petition in August 2019, the mother never attempted to contact them regarding the child. Nor did the mother visit with the child, pay child support or send the child any written communication or gifts. On cross-examination, the grandmother conceded that she would not have been able to receive collect calls from the mother during the periods when the mother was incarcerated and did not inform the mother of her new address upon moving in 2017. She noted, however, that she did not have the mother's cell phone number at that time.
The father's testimony was largely consistent with that of the grandparents as it pertained to the mother's interactions with the child. He explained that the last time he had spoken with the mother about the child was in 2017 when she asked how the child was doing. He had not had any contact with the mother regarding the child in the six months prior to the filing of the underlying petition, nor had he received any child support or gifts from her. The father confirmed that the last visit the mother had with the child in his presence was in the fall of 2015 when he was with the child at a park and ran into her.
Alexandra Buckley, the mother's counsel in the paternity proceeding, testified on the mother's behalf that the mother filed two visitation petitions, the first in August 2017, which was withdrawn, and the second in December 2018, which was dismissed in April 2019. Buckley revealed that, during conversations with [*3]the grandparents' attorney throughout the course of her representation, it was made clear that the grandparents did not want to provide the mother with photographs of the child or allow her to have contact with him absent approval from the court. The mother also testified and conceded that, in the six months prior to the filing of the adoption petition, she had not seen the child, paid child support, written to him or contacted the grandparents about him. She noted, however, that she was incarcerated at certain points during the relevant time frame — including at the time of her testimony — and maintained that she could not contact the grandmother during those periods because the grandmother's cell phone was not set up to accept collect calls. Nevertheless, the mother revealed that she was not incarcerated in February 2019 and, despite knowing the grandmother's phone number, never attempted to contact her directly.[FN2] The mother explained that she declined to do so because she was concerned about "police contact" if she interacted with the grandmother, acknowledging that she has "a bad attitude," and if the grandmother had refused to allow her to see or talk to the child she "d[idn't] think [she] would have t[aken] that very well."
On this record, we discern no basis upon which to disturb Family Court's finding that the grandparents established, by clear and convincing evidence, that the mother's consent to the child's adoption was not required. All of the witnesses, including the mother herself, confirmed that, in the six months preceding the filing of the adoption petition, the mother had not attempted to contact the grandparents or the child, nor had she paid child support or sent gifts. Although the mother twice filed petitions for visitation with the child, such conduct alone does not defeat the grandparents' showing of abandonment (see Matter of Colby II. [Chalmers JJ.], 140 AD3d 1484, 1485 [2016]; Matter of Jamal B. [Johnny B.], 95 AD3d 1614, 1615-1616 [2012], lv denied 19 NY3d 812 [2012]), nor do her sporadic requests, during the course of the proceedings, for photographs of the child and information about his well-being.
Family Court also correctly found that the mother failed to demonstrate a reasonable excuse for failing to maintain contact. The mother's incarceration does not constitute a reasonable excuse (see Matter of Mason H. [Joseph H.], 31 NY3d 1109, 1110 [2018]; Matter of Micah L. [Rachel L.], 192 AD3d 1344, 1344 [2021]; Matter of Clair, 231 AD2d 842, 842 [1996], lv denied 89 NY2d 806 [1997]), and her purported inability to make collect calls to the grandmother while incarcerated does not account for her lack of communication during periods when she was not incarcerated. Moreover, the fact that the mother did not know the grandparents' new mailing address does not explain her failure to attempt to send letters to the mailing address that she did know or to contact the child through other means. Given the mother's failure [*4]to show more than minimal interest in the child during the relevant six-month time frame, and her lack of an acceptable reason for the absence of such contact, Family Court's determination is supported by the record (see Matter of Amanda EE. v Nicholas FF., 144 AD3d 1427, 1428-1429 [2016]; Matter of Lori QQ. v Jason OO., 118 AD3d at 1084). The mother's remaining contention that Family Court abused its discretion in denying her request to have the father excluded from the courtroom is unavailing.
Garry, P.J., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The father signed an extra judicial surrender on August 16, 2019 consenting to the child's adoption, which contained a clause permitting him to withdraw the surrender within 45 days.

Footnote 2: The mother averred that she had her pastor attempt to contact the grandmother at some point, but the grandmother denied having received such a communication.