Matter of David UU. (Jeanie UU.) (2022 NY Slip Op 04203)

Matter of David UU. (Jeanie UU.)

2022 NY Slip Op 04203

Decided on June 30, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 30, 2022

533184
[*1]In the Matter of David UU., Alleged to be an Abandoned Child. Schuyler County Department of Social Services, Respondent; Jeanie UU., Appellant.

Calendar Date:May 26, 2022

Before:Garry, P.J., Lynch, Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Clea Weiss, Ithaca, for appellant.
Steven J. Getman, County Attorney, Watkins Glen (Vinton Bovier Stevens of counsel), for respondent.
Lisa K. Miller, McGraw, attorney for the child.

Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of Schuyler County (Miller, J.), entered December 15, 2020, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be abandoned, and terminated respondent's parental rights.
Respondent is the mother of a child (born in 2007). In February 2019, the child was removed from respondent's home after neglect proceedings were brought against her. The child was placed under the care of a paternal relative and her husband, who ultimately became his foster parents, and respondent was afforded weekly visitation, to be supervised by petitioner. Due to respondent's subsequent lack of contact with the child after July 2019, petitioner commenced this abandonment proceeding against her on January 15, 2020. Thereafter, respondent was adjudged to have neglected the child and petitioner commenced permanent neglect proceedings against the father. Following a combined fact-finding hearing on the petitions against the child's parents, Family Court determined that respondent had abandoned the child and terminated her parental rights.[FN1] Respondent appeals.
Respondent initially contends that cumulative procedural errors regarding the permanency planning hearings denied her due process of law. Yet, as respondent acknowledges, she failed to appeal from the permanency orders and, therefore, her constitutional challenges are not properly before this Court (see Matter of Melody J. v Clinton County Dept. of Social Servs., 72 AD3d 1359, 1360 [2010], lv denied 15 NY3d 703 [2010]).[FN2] In any event, we would find these challenges unavailing were we to consider them. The record discloses that a permanency hearing had been properly scheduled for March 26, 2020 (see Family Ct Act § 1089 [a] [3]). Prior to the hearing date, however, Family Court temporarily paused the proceedings as a result of the COVID-19 pandemic emergency (see Executive Order [Cuomo] Nos. 202.72, 202.8 [9 NYCRR 8.202.72, 8.202.8]). When the court resumed in-person proceedings on the matter in September 2020, the parties and the father agreed to adjourn the combined fact-finding hearing so as to first hold the belated permanency hearing based on a March 2020 permanency report, after which the court modified the permanency goal to be "reunification with a parent with a concurrent plan of adoption." It cannot be said that respondent's due process rights were infringed when the court, in essence restored — upon consent — the previously scheduled March 2020 permanency hearing after ending the emergency pause on the proceedings.[FN3] We also reject respondent's contention that the erroneous imposition of concurrent permanency goals requires reversal, as "the court generally proceeded as if the goal was to return the child to [respondent]" (Matter of Timothy GG. [Meriah GG.], 163 AD3d 1065, 1067 [2018], lvs denied 32 NY3d 908 [2018]).
Respondent next assails Family Court's order terminating her [*2]parental rights premised upon a finding that she abandoned the child. "A finding of abandonment is warranted when it is established by clear and convincing evidence that the parent failed to visit or communicate with the child or the petitioning agency during the six-month period immediately prior to the filing of the abandonment petition, although able to do so and not prevented or discouraged from doing so by [the agency]" (Matter of Kihona U. [Britian MM.], 200 AD3d 1425, 1425 [2021] [internal quotation marks and citations omitted]; see Social Services Law § 384-b [4] [b]; [5] [a]). "A parent's ability to visit and/or communicate with his or her child is presumed, and once a failure to do so is established, the burden is upon the parent to prove an inability to maintain contact or that he or she was prevented or discouraged from doing so by the petitioning agency" (Matter of Jackie B. [Dennis B.], 75 AD3d 692, 693 [2010] [citations omitted]; see Matter of Khavonye FF. [Latasha EE.], 198 AD3d 1134, 1135-1136 [2021]).
It is undisputed that respondent has not seen the child since a supervised visit held on July 10, 2019. During that period respondent resided .2 miles from the location where the visitation was to occur. Petitioner offered testimony from a caseworker, who avowed that she had no communications with respondent after that visit, despite petitioner's multiple attempts to contact respondent by way of letters, calls and in-person visits to her home. The caseworker further attested that her review of her office call logs revealed that respondent had not called her during that time. Petitioner also provided the testimony of the paternal relative, who averred that while respondent had sent her a few text messages during the relevant period, these were more in the nature of "rants," in which she did not inquire about the child's well-being or request to visit him. In response, the paternal relative directed respondent to contact petitioner as, to her understanding, all contacts between the child and respondent were to be mediated by petitioner. The paternal relative was unaware of any communication between the child and respondent after July 2019.
Respondent, in turn, testified that she canceled the next scheduled weekly visitation subsequent to the July 10, 2019 visit due to a medical appointment to treat her cerebral palsy condition. Respondent avowed that she never "heard back" from petitioner about rescheduling or otherwise. She explained that, after her last visit with the child, she experienced depression, which, coupled with certain physical limitations and the pains brought on by the COVID-19 pandemic, hindered her ability to see the child. She nonetheless attested to calling petitioner approximately 12 times and leaving voicemails during the relevant time period. While acknowledging that she did not send the child letters, respondent attested that she contacted him via social media even when she was aware that he had no [*3]access to the internet. Respondent further testified that she attempted to contact the child by way of text messages to the paternal relative.
We find that the foregoing proof constitutes clear and convincing evidence that respondent failed to maintain contact with the child and/or petitioner during the statutory period (see Matter of Zakariya HH. [Ahmed II.], 192 AD3d 1361, 1363-1364 [2021], lv denied 37 NY3d 905 [2021]; Matter of Dimitris J. [Sarah J.], 141 AD3d 768, 769-770 [2016]). Although there was conflicting testimony regarding respondent's attempts to contact petitioner via phone, we accord deference to Family Court's assessment of credibility and resolution of this issue in petitioner's favor (see Matter of Kayson R. [Christina S.], 166 AD3d 1346, 1347-1348 [2018]; Matter of Leon CC. [Larry CC.], 86 AD3d 764, 766 [2011], lv denied 17 NY3d 714 [2011]; Matter of Jackie B. [Dennis B.], 75 AD3d at 694). For her part, respondent failed to rebut petitioner's showing of abandonment. To the extent that respondent's cerebral palsy or mental health issues could have affected her ability to maintain contact with the child or petitioner, she did not provide competent evidence substantiating any such claims (see Matter of Madelynn T. [Rebecca M.], 148 AD3d 1784, 1785-1786 [2017]; Matter of Amanda JJ., 254 AD2d 544, 546 [1998]). Moreover, respondent's communications with the paternal relative, as well as her attempts to contact the child via social media, were "too infrequent, sporadic and insubstantial to defeat petitioner's showing of abandonment," regardless of the nature of those messages (Matter of Damien D. [Ronald D.], 176 AD3d 1411, 1412 [2019]; see Matter of Lamar LL. [Loreal MM.], 86 AD3d 680, 681 [2011], lv denied 17 NY3d 712 [2011]; Matter of Jasper QQ., 64 AD3d 1017, 1020 [2009], lv denied 13 NY3d 706 [2009]). Finally, we note that the attorney for the child strongly supports Family Court's finding. Accordingly, we discern no basis to disturb Family Court's finding that respondent abandoned the child. Respondent's remaining contentions, to the extent not addressed herein, have been considered and found to be without merit.
Garry, P.J., Lynch, Aarons and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: We take judicial notice that, in November 2021, Family Court freed the child for adoption after terminating the father's parental rights upon a finding of permanent neglect (see Matter of Carrie B. v Josephine B., 81 AD3d 1009, 1009 n 1 [2011], appeal dismissed 17 NY3d 773 [2011]).

Footnote 2: Respondent is clearly familiar with Family Court procedures as the record confirms her extensive exposure in that arena and, in fact, Family Court took judicial notice of the fact that respondent has lost custody and placement of her six children born before this child.

Footnote 3: Contrary to respondent's contention, we do not find that her counsel was ineffective for consenting to this procedural maneuver (see Matter of Donald G. v Hope H., 160 AD3d 1061, 1065 [2018]; Matter of Tracey L. v Corey M., 151 AD3d 1209, 1212 [2017]).