Matter of Bradyen ZZ. (Robert A.) (2023 NY Slip Op 02359)

Matter of Bradyen ZZ. (Robert A.)

2023 NY Slip Op 02359

Decided on May 4, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 4, 2023

534664
[*1]In the Matter of Bradyen ZZ., Alleged to be an Abandoned Child. Chemung County Department of Social Services, Respondent; Robert A., Appellant.

Calendar Date:March 28, 2023

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Michelle I. Rosien, Philmont, for appellant.
M. Hyder Hussain, County Attorney, Elmira (Damian M. Sonsire of counsel), for respondent.
Allen E. Stone Jr., Vestal, attorney for the child.

Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of Chemung County (Richard W. Rich Jr., J.), entered December 9, 2021, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be abandoned, and terminated respondent's parental rights.
Respondent is the father of the subject child (born in 2019). When the child was approximately one month old, he was placed in petitioner's care and a neglect proceeding was commenced against respondent and the child's mother.[FN1] In April 2021, petitioner commenced this proceeding to terminate respondent's parental rights based upon abandonment. Following a fact-finding hearing, Family Court determined that respondent had abandoned the child and terminated his parental rights.[FN2] Respondent appeals.
"To warrant a termination of parental rights on the ground of abandonment, the petitioning agency bears the burden of establishing by clear and convincing evidence that, during the six months preceding the petition's filing, the parent evinced an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child[ ] and communicate with the child[ ] or agency, although able to do so and not prevented or discouraged from doing so by the agency" (Matter of Joshua M. [Brittany N.], 167 AD3d 1268, 1269 [3d Dept 2018] [internal quotation marks, brackets and citations omitted]; see Matter of Kayson R. [Christina S.], 166 AD3d 1346, 1346 [3d Dept 2018]). "A parent's ability to visit and/or communicate with his or her child is presumed, and once a failure to do so is established, the burden is upon the parent to prove an inability to maintain contact or that he or she was prevented or discouraged from doing so by the petitioning agency" (Matter of Max HH. [Kara FF.], 170 AD3d 1456, 1459 [3d Dept 2019] [internal quotation marks and citations omitted]; see Matter of Syri'annah PP. [Sayyid PP.], 212 AD3d 1005, 1007 [3d Dept 2023]).
The evidence presented by petitioner at the fact-finding hearing consisted of the testimony of three caseworkers, the child's foster care mother and a child support printout from the Support Collection Unit. The evidence established that respondent was referred to Pathways, Inc.[FN3] to receive enhanced visitation services — consisting of a combination of supervised visitations, along with parent education. Respondent was required to confirm his attendance prior to the visitation, to attend alcohol and drug, mental health and sex offender evaluations — and to receive treatment if required. Each caseworker testified that during the relevant six-month time period respondent refused petitioner's services and recommendations, attended only one visitation and was consistently verbally aggressive. The foster care mother testified that she provided respondent with pictures, information regarding doctor's appointments and the child's height and weight percentiles; however, respondent did not attend any [*2]doctor's appointments, never called the child and, in fact, only called the foster care mother on one occasion.
The record further demonstrates that respondent did not send the child letters or gifts or remit child support. We agree with Family Court that petitioner presented clear and convincing evidence of the father's failure to maintain contact with the child during the statutory period and the minimal contact that he did have with the child was too infrequent, sporadic or insubstantial to defeat a showing of abandonment (see Matter of Taj'ier W. [Joseph W.], 209 AD3d 1203, 1204-1205 [3d Dept 2022]; Matter of Micah L. [Rachel L.], 192 AD3d 1344, 1345 [3d Dept 2021]).
The burden therefore shifted to respondent to demonstrate that he was unable to maintain contact or, if able, was prevented or discouraged from doing so by petitioner. Respondent testified that the recommendations for services were unnecessary as he did not neglect the child, that petitioner afforded the child's mother more parenting opportunities than he and that the extra hours he was required to work during the COVID-19 pandemic prevented him from visiting his child. Family Court found the father's contentions unavailing, and we agree. Initially, we find that the services recommended by petitioner constituted reasonable preconditions to unsupervised visitations and custody of the child as respondent self-reported having bipolar disorder, posttraumatic stress disorder, attention deficit hyperactivity disorder and that he self-medicated with marihuana (see Matter of Micah L. [Rachel L.], 192 AD3d at 1346; Matter of Alec B., 34 AD3d 1110, 1111 [3d Dept 2006]). Further, respondent did not present any evidence establishing that any alleged disparity between the visitation accorded to him and the child's mother precluded him from visiting or contacting the child. Nor did respondent prove that any alleged disparity was utilized by the caseworkers as a means to discourage him from contacting the child (see Matter of Taj'ier W. [Joseph W.], 209 AD3d at 1205). Lastly, respondent failed to establish that COVID-19 and his resulting increased work schedule "so permeated his life as to make contact with his child or petitioner during the relevant time period infeasible" (Matter of Colby II. [Chalmers JJ.], 140 AD3d 1484, 1486 [3d Dept 2016] [internal quotation marks and citations omitted]; see Matter of Isaiah OO. [Benjamin PP.], 149 AD3d 1188, 1191 [3d Dept 2017], lv denied 29 NY3d 913 [2017]). Accordingly, there is no basis upon which to disturb Family Court's determination to terminate respondent's parental rights to the subject child on the basis of abandonment (see Matter of Max HH. [Kara FF.], 170 AD3d at 1460).[FN4] We have examined respondent's remaining contentions and find them to be without merit.
Garry, P.J., Clark, Aarons and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: At the commencement of the neglect proceeding, petitioner had not established that respondent was the father of the child. By an order entered in March 2020, petitioner withdrew the neglect petition against respondent, without prejudice. Thereafter, respondent was adjudicated the father of the child by an order of filiation entered in June 2020.

Footnote 2: The mother of the subject child judicially surrendered her parental rights.

Footnote 3: Pathways, Inc. is a not-for-profit organization serving individuals and families of the Southern Tier of New York by providing an array of services and programs.

Footnote 4: Although not determinative, we note that the attorney for the child supports Family Court's determination terminating respondent's parental rights.