Matter of Kamariana SS. (Anthony SS.) (2024 NY Slip Op 02357)

Matter of Kamariana SS. (Anthony SS.)

2024 NY Slip Op 02357

Decided on May 2, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 2, 2024

CV-23-0861
[*1]In the Matter of Kamariana SS. and Another, Alleged to be Abandoned Children. Schenectady County Department of Social Services, Respondent; Anthony SS., Appellant.

Calendar Date:March 27, 2024

Before:Egan Jr., J.P., Aarons, Pritzker, Lynch and Fisher, JJ.

Sandra M. Colatosti, Albany, for appellant.
Christopher H. Gardner, County Attorney, Schenectady (Jennifer M. Barnes of counsel), for respondent.
Veronica Reed, Schenectady, attorney for the children.

Egan Jr., J.P.
Appeal from an order of the Family Court of Schenectady County (Jill S. Polk, J.), entered June 23, 2023, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject children to be abandoned, and terminated respondent's parental rights.
Respondent (hereinafter the father) is the father of two children (born in 2019 and 2020). The older child was removed from the care of the parents in September 2020 and placed in the care of Maria SS., her paternal aunt. Shortly after the birth of the younger child in October 2020, the younger child was also removed and placed in the care of the paternal aunt. The subject children were subsequently adjudicated to be neglected, after which placement was continued with the paternal aunt. A series of temporary orders of protection were also issued that, in relevant part, prohibited the father from engaging in visitation or communication with the children except as deemed appropriate by petitioner. The father was subsequently incarcerated in the Schenectady County Jail from September 23, 2021 to May 20, 2022.
On May 11, 2022, petitioner commenced this proceeding alleging that the father had abandoned the children while he was incarcerated over the preceding six months. Following a fact-finding hearing, Family Court issued an order in March 2023 finding that the children had been abandoned by the father and that his parental rights should be terminated. The father appeals.[FN1]
We affirm. "Family Court may terminate parental rights based upon a finding of abandonment if the petitioning agency proves by clear and convincing evidence that, during the six months preceding the petition's filing, the parent 'evince[d] an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency' " (Matter of Micah L. [Rachel L.], 192 AD3d 1344, 1344 [3d Dept 2021] [citations omitted], quoting Social Services Law § 384-b [5] [a]; see Matter of Darius L. [Daniel L.], 222 AD3d 1259, 1259-1260 [3d Dept 2023]). Of note, "[p]arents are presumed able to visit and communicate with their children and, although incarcerated parents may be unable to visit, they are still presumed able to communicate with their children absent proof to the contrary" (Matter of Mason H. [Joseph H.], 31 NY3d 1109, 1110 [2018]; see Matter of Darius L. [Daniel L.], 192 AD3d at 1260). Moreover, contrary to the suggestion of the attorney for the children, "petitioner had no obligation to exercise diligent efforts to encourage visits or communications between" the father and the children in the context of this abandonment proceeding (Matter of Christopher MM., 210 AD2d 767, 768 [3d Dept 1994], lv denied 85 NY2d 807 [1995]; see Social Services Law § 284-b [5] [a], [b]; Matter of Julius P., 63 NY2d 477, 481 [1984]; Matter of Anonymous, 40 [*2]NY2d 96, 102 [1976]; Matter of Zakariya HH. [Ahmed II.], 192 AD3d 1361, 1363 [3d Dept 2021], lv denied 37 NY3d 905 [2021]).
With those standards in mind, petitioner presented the hearing testimony of the paternal aunt, petitioner's caseworker who was handling the father's case, and one of its supervisors. This proof reflected that the jail where the father was incarcerated did not allow the children to visit between November 2021 and May 2022 and that, as a result, any communication between them would need to be via other means. There was also no question that contacting the children through the paternal aunt posed challenges for the father, as he did not have her mailing address, and he was prohibited from having unsupervised contact with the children. That said, the paternal aunt testified that, to her knowledge, the father only communicated with the children once between November 2021 and May 2022, when he called an older sibling of the children who was visiting her residence in March 2022 and the paternal aunt allowed him to talk to the children on speakerphone for a few minutes. The paternal aunt added that she told the father that she would not allow further telephone contact during that call, reminding him that he was prohibited from having unapproved contact with the children and that she was afraid of "get[ting] in trouble for having unsupervised phone conversations." The father's caseworker further testified that he had been provided with petitioner's contact information, and she and her supervisor confirmed that they were unaware of any effort by the father to contact petitioner between November 2021 and May 2022.
As the father concedes, the proof that he made one brief phone call with the children and failed to seek additional contact with them satisfied petitioner's "initial burden on the petition, shifting the burden to [the father] to establish that he maintained sufficient contact with the child[ren] or was otherwise unable or prevented from doing so" (Matter of Zakariya HH. [Ahmed II.], 192 AD3d at 1363). The father attempted to meet that burden in his testimony by suggesting that he had been prevented from maintaining contact with the children, pointing out that the paternal aunt had declined to permit additional telephonic contact with the children and that he did not have her address to write to them.[FN2] He was admittedly aware that his communication with the children had to be supervised by petitioner, however, and his own testimony established that he had the ability to call or write petitioner to inquire about the children or arrange for contact with them but that he failed to do so because he was "upset" with petitioner. His testimony accordingly reflected that, even if his uncorroborated claim that he attempted to contact petitioner at some point through a third party was accurate, his lack of a role in the life of the children during his incarceration resulted from his minimal efforts to arrange one. Thus, having considered [*3]the evidence presented at the fact-finding hearing, and according appropriate deference to Family Court's credibility determinations, we are satisfied that the record established that the father abandoned the children "during the relevant six-month period, and his parental rights were appropriately terminated" (id. at 1364; see Matter of David UU. [Jeanie UU.], 206 AD3d 1502, 1504-1506 [3d Dept 2022]; Matter of Joseph DD. [Joseph PP.], 193 AD3d 1290, 1291-1292 [3d Dept 2021]; compare Matter of Khavonye FF. [Latasha EE.], 198 AD3d 1134, 1136-1137 [3d Dept 2021]).
Aarons, Pritzker, Lynch and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The father appealed from the March 2023 fact-finding order rather than, as required, the dispositional order entered in June 2023 (see Family Ct Act § 1112 [a]). Upon the father's motion, this Court treated his notice of appeal as a valid notice of appeal from the dispositional order (2023 NY Slip Op 74114[U] [3d Dept 2023]).

Footnote 2: The father also claimed that he had briefly spoken to the children when he called the mother during one of her supervised visits with them, but Family Court found that uncorroborated claim to be incredible.