[829 NE2d 661, 796 NYS2d 569]

In the Matter of ANNETTE B. ORANGE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JOSEPH B., Appellant.

Argued March 30, 2005; decided May 3, 2005

## POINTS OF COUNSEL

*Neal D. Futerfas,* White Plains, for appellant. The Appellate Division erred and abused its discretion in affirming the decision and order of the Family Court which (1) determined that respondent had proved by the requisite burden of proof that appellant had abandoned the subject child, (2) terminated appellant's parental rights to that child and (3) freed that child for adoption, where respondent failed to prove abandonment—and lack of interference on the part of the Orange County Department of Social Services—by clear and convincing evidence. (*Halloran v Virginia Chems.,* 41 NY2d 386; *Telaro v Telaro,* 25 NY2d 433; *Matter of Richardson v Fiedler Roofing,* 67 NY2d 246; *Massachusetts Natl. Bank v Shinn,* 163 NY 360; *Santosky v Kramer,* 455 US 745; *Matter of Michael B.,* 58 NY2d 71; *Matter of I.R.,* 153 AD2d 559; *Matter of Jasmine T.,* 162 AD2d 756; *Matter of Anthony M.,* 195 AD2d 315; *Matter of Christina W.,* 162 AD2d 997.)

*Susan M. Damplo,* Ardsley, for Annette B., respondent. I. The Second Department erred in affirming the abandonment disposition where the Family Court lacked jurisdiction in those proceedings since the Orange County Department of Social Services (DSS) had never notified the father of the original proceedings in which DSS took custody of his daughter. (*Matter of Julius P.,* 63 NY2d 477; *Matter of Raven Carol L.,* 295 AD2d 610; *Matter of Samantha L.J.,* 155 AD2d 980.) II. The Appellate Division erred in affirming the Family Court's decision to terminate Joseph B.'s parental rights based on abandonment because appellant's attempts to contact and communicate with his daughter, Annette, were thwarted by the mother's move without disclosing the child's whereabouts and the Orange County

Department of Social Service's failure to notify appellant that Annette was in foster care. (*People v Harris*, 77 NY2d 434; *Matter of Ricky Ralph M.*, 56 NY2d 77; *Matter of Maxwell*, 4 NY2d 429; *Matter of Anonymous*, 40 NY2d 96; *Santosky v Kramer*, 455 US 745; *St. Mary's Honor Ctr. v Hicks*, 509 US 502; *Matter of Goldman*, 41 NY2d 894; *Matter of Shawn P.*, 187 AD2d 432; *Matter of Joseph Michael D.*, 138 AD2d 974; *Matter of Madeline S.*, 3 AD3d 13.)

*David Darwin, Acting County Attorney*, Goshen (*Stephen Toole* and *Peter R. Schwarz* of counsel), for Orange County Department of Social Services, respondent. The Appellate Division did not abuse its discretion in affirming the decision and order of the Family Court which found by clear and convincing evidence that appellant had abandoned his child based upon an analysis of the credible facts and an application of the relevant statutory and case law. (*Matter of Omar RR.*, 270 AD2d 588; *Matter of Andrea A.*, 12 AD3d 991; *Matter of Marie Luz C.*, 6 AD3d 304; *Matter of Matthew YY.*, 274 AD2d 685; *Matter of Charles U.*, 254 AD2d 588; *Matter of Jose Andres M.*, 8 AD3d 385; *Matter of Ronald D.*, 282 AD2d 533; *Matter of Shakim Ravon B.*, 257 AD2d 547; *Matter of Orange County Dept. of Social Servs. [Christine S.]*, 203 AD2d 367; *Matter of Anthony M.*, 195 AD2d 315.)

## OPINION OF THE COURT

R.S. Smith, J.

The issue is whether there was legally sufficient evidence to support Family Court's finding, affirmed by the Appellate Division, that Joseph B. abandoned his daughter, Annette B. We hold that there was.

This case is difficult because, although Joseph received proper notice of this proceeding, the Department of Social Services (DSS) failed to give him notice of two previous, related proceedings in which he was entitled to notice by law. These were significant derelictions, and might have warranted Family Court in finding that there was no abandonment because the agency "prevented or discouraged" Joseph from communicating with Annette. But Family Court found, in substance, that Joseph's failure to communicate resulted from his own choice, not from the agency's failings, and the Appellate Division agreed. The affirmed finding is supported by the record.

## Facts and Procedural History

Annette was born on August 22, 1991. The record does not indicate that Joseph was ever married to Annette's mother, Marissa R., or that Annette ever lived with him. In the first years of Annette's life, Joseph lived in Bellport, Long Island, and Annette with Marissa in Central Islip. Joseph testified that in those years he saw Annette every weekend.

At some point, apparently in 1996, Marissa and Annette moved from their home in Central Islip. Also in 1996, Joseph was arrested for an offense involving the sale of drugs. Joseph remained in prison through the time of the trial of this case in 2001, and admittedly had no contact with Annette after she moved away.

Joseph testified that he did not know where Marissa had taken Annette, and that he made three attempts to find out. He testified that he went to the Central Islip house and was told by the occupant that Marissa no longer lived there. He also testified that he spoke to Marissa's foster mother, Geneva L., who told him she did not know where Marissa had gone. Finally, he testified that, after he was in prison, he asked his mother to contact DSS on Long Island to ask where Annette was, and that she reported she could get no information. Joseph's testimony about these three inquiries contains little more detail than we have just recited; none of it is corroborated by any document, or by any other witness. There is no evidence that Joseph made any other attempt to contact Annette from 1996 on.

Marissa moved with Annette to Orange County where, in 1998, Annette came into the care of Orange County DSS as a result of an emergency child neglect removal. Family Court Act § 1035 (d) requires that both parents be notified of such a removal proceeding. The record does not show that any notice was sent to Joseph, or that DSS made any effort to find out Joseph's address.

Marissa later surrendered her parental rights to Annette. The order approving the surrender is dated June 27, 2001. Joseph was entitled to notice of this second proceeding also (Social Services Law § 384-c), but none was sent to him.

DSS began the present proceeding to terminate Joseph's parental rights on August 15, 2001. This time, notice was sent to Joseph. A DSS caseworker testified that Joseph's address was found "[t]hrough Child Support Collection Unit." Nothing in the record explains why he could not have been located

through the same source when the two previous proceedings were brought. Around the time this proceeding was begun, Joseph also received, through his mother, a letter from Geneva saying that Annette was in foster care.

At the hearing in this case, Joseph testified that he did not write to Annette while in prison because he did not know she was in foster care. He admitted, however, that he did know she was in foster care after he received notice of the present proceeding in August 2001, and that he had not written to her as of November 26, 2001, the date he testified.

Family Court found "by clear and convincing evidence" that Joseph had abandoned Annette, and ordered that Joseph's guardianship and custody rights be committed to DSS. The Appellate Division, with one Justice dissenting, affirmed. We granted leave to appeal, and now affirm.

## Discussion

An order "committing the guardianship and custody of a child," also known as a termination of parental rights, may be granted where the parent whose rights are at issue "abandoned such child for the period of six months immediately prior to the date on which the petition is filed in the court" (Social Services Law § 384-b [4] [b]). Abandonment is defined in Social Services Law § 384-b (5), which provides:

> "(a) For the purposes of this section, a child is 'abandoned' by his parent if such parent evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency. In the absence of evidence to the contrary, such ability to visit and communicate shall be presumed.

> "(b) The subjective intent of the parent, whether expressed or otherwise, unsupported by evidence of the foregoing parental acts manifesting such intent, shall not preclude a determination that such parent has abandoned his or her child. In making such determination, the court shall not require a showing of diligent efforts, if any, by an authorized agency to encourage the parent to perform the acts specified in paragraph (a) of this subdivision."

"[P]arent" is defined to include an incarcerated parent (Social Services Law § 384-b [2] [b]). While such a parent of course is not able to visit the child, he or she is still presumed able to communicate absent proof to the contrary (*see Matter of I.R.*, 153 AD2d 559 [2d Dept 1989]). Abandonment must be proved by clear and convincing evidence (*Santosky v Kramer*, 455 US 745 [1982]).

Joseph argues that this record will not support Family Court's finding of abandonment. While he admits that he did not communicate with Annette during the six months immediately before the filing of the petition, he says that he was not able to do so because, through no fault of his own, he did not know where she was. He also says that he was "prevented or discouraged" from contacting her by DSS's failure to give him the legally required notice either of the 1998 neglect proceeding or of the 2001 termination of Marissa's parental rights.

Joseph's interpretation of the evidence is a possible one, but it is not the only permissible one. Family Court could and did find, by clear and convincing evidence, that Joseph, had he made a reasonable effort, would not have lost touch with Annette so completely, and that DSS's failure to send him two required notices, while inexcusable, was not in fact the reason he failed to communicate with his daughter.

Joseph testified to three attempts to locate Annette—inquiries of the woman who lived at her former home, of Geneva (Marissa's foster mother) and (through Joseph's mother) of DSS. His testimony to these inquiries was brief, vague and uncorroborated, and Family Court was not required to credit it. Even if it accepted his testimony, Family Court was entitled to conclude that a parent in Joseph's position who was not willing to abandon his child would have done more. The record does not show that all possible means of finding Annette vanished after 1996; on the contrary, the record shows that Geneva and Joseph's mother were in touch around the time of the filing of the petition in 2001, and that Geneva then knew of Annette's status. And even if the only open avenues of inquiry were those that Joseph tried, Family Court could find that a truly interested parent would have tried them more persistently.

Family Court found "very telling," as do we, Joseph's conduct after he learned, no later than August 2001, that his daughter was in foster care. While he opposed the petition to terminate his parental rights, there is no evidence in the record that he

made any effort to get in touch with Annette. While his postpetition conduct is not determinative—the relevant period, for abandonment purposes, is the six months *before* the filing of the petition—it was permissible for Family Court to infer that Joseph would not have done before the petition what he did not do afterwards. Specifically, Family Court could find that, if Joseph had received the notice he was entitled to of the two previous proceedings, those notices would no more have prompted him to get in touch with Annette than did the August 2001 notice he did receive.

We thus conclude that there was legally sufficient evidence to support Family Court's affirmed findings, and that its conclusion that Joseph abandoned Annette is supported by the record. We do not reach this conclusion lightly. Joseph had an important, constitutionally-protected right to a parental relationship with his daughter, and DSS gave his rights too little attention. But Annette's interests are important too. At the time of the hearing below, she was nine years old and living in foster care; her mother had surrendered parental rights to her. DSS was seeking to free Annette for adoption, opposed by a father Annette had never lived with and with whom she had had no contact since she was four or five. Under these sad circumstances, it was Family Court's duty, giving careful attention both to Joseph's interests and Annette's, to evaluate the facts as best it could. It did so, and the Appellate Division found it had done so correctly. Their conclusion is based on record evidence; the result is one that we may not disturb.

Accordingly, the order of the Appellate Division should be affirmed, without costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and READ concur.

Order affirmed, without costs.