Matter of Najuan W. (Stephon W.) (2020 NY Slip Op 03315)





Matter of Najuan W. (Stephon W.)


2020 NY Slip Op 03315


Decided on June 12, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 12, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CARNI, LINDLEY, CURRAN, AND DEJOSEPH, JJ.


408 CAF 19-00860

[*1]IN THE MATTER OF NAJUAN W. JEFFERSON COUNTY DEPARTMENT OF SOCIAL SERVICES, PETITIONER-RESPONDENT; STEPHON W., RESPONDENT-APPELLANT. (APPEAL NO. 2.)






LYNNE M. BLANK, WEBSTER, FOR RESPONDENT-APPELLANT. 
MICHAEL D. WERNER, WATERTOWN, FOR PETITIONER-RESPONDENT.
JUSTIN F. BROTHERTON, WATERTOWN, ATTORNEY FOR THE CHILD. 


 Appeal from an order of the Family Court, Jefferson County (Eugene J. Langone, Jr., J.), entered April 26, 2019 in a proceeding pursuant to Social Services Law § 384-b. The order terminated the parental rights of respondent with respect to the subject child. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: In appeal No. 1, respondent father appeals from a fact-finding order determining that he had abandoned the subject child. In appeal No. 2, he appeals from a final order of disposition that, inter alia, terminated his parental rights on the ground of abandonment.
Initially, appeal No. 1 must be dismissed because the appeal from the dispositional order in appeal No. 2 "brings up for review the propriety of a fact-finding order" (Matter of Lisa E. [appeal No. 1], 207 AD2d 983, 983 [4th Dept 1994]; see generally Matter of Nevaeh L. [Katherine L.], 177 AD3d 1400, 1401 [4th Dept 2019]).
In appeal No. 2, we reject the father's contention that Family Court erred in determining that he abandoned the child. The evidence at the fact-finding hearing established that, in 2009, the mother failed to return the child to the father's home in Pennsylvania after a weekend visit. That was the last time the father saw the child. Although the mother thereafter contacted the father from blocked telephone numbers and through social media, she only allowed the father to speak with the child occasionally. The father's last conversation with the child was in 2015. Around that time, he filed a petition in Pennsylvania seeking modification of the existing joint custody arrangement between him and the mother. A bench warrant was issued for the mother's arrest, and the father was informed that the child was residing in Jefferson County, New York. The father, however, never initiated a proceeding to modify custody in that county and testified that he was told that there was nothing he could do to obtain custody of the child until after the mother was arrested. In 2016, the child was removed from the mother's care after a neglect petition was filed against her. The father was initially unaware of that petition because petitioner was only able to serve him by publication. He did not learn that the child had been placed in foster care until the filing of the instant termination petition in August 2018.
Pursuant to Social Services Law § 384-b (5) (a), "a child is abandoned' by his [or her] parent if such parent evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency." A child is deemed abandoned when the parent engages in such behavior "for the period of six months [*2]immediately prior to the date on which the petition [was] filed" (§ 384-b [4] [b]). "In the absence of evidence to the contrary, such ability to visit and communicate shall be presumed" (§ 384-b [5] [a]; see Matter of Jarrett P. [Jeremy P.], 173 AD3d 1692, 1693 [4th Dept 2019], lv denied 34 NY3d 902 [2019]; Matter of Madelynn T. [Rebecca M.], 148 AD3d 1784, 1785 [4th Dept 2017]). Here, the father does not dispute that he failed to maintain contact with the child for the statutory period. Instead, he asserts that contact with the child was infeasible or discouraged by the agency, and that the court failed to consider the mother's limitation of his contact with the child and petitioner's failure to personally serve him with the neglect petition against the mother. We reject those contentions.
"In the abandonment context, the court shall not require a showing of diligent efforts, if any, by an authorized agency to encourage the parent to perform the acts specified in' " Social Services Law § 384-b (5) (a) (Matter of Gabrielle HH., 1 NY3d 549, 550 [2003], quoting § 384-b [5] [b]; see Madelynn T., 148 AD3d at 1785). Rather, it is the parent's burden to establish that circumstances existed that prevented his or her contact with the child or agency or that the agency discouraged such contact (see Madelynn T., 148 AD3d at 1785; see also Gabrielle HH., 1 NY3d at 550).
We conclude that the father failed to meet that burden. Indeed, although the mother removed the child from the father's care and took the child to an undisclosed location in violation of the custody arrangement, the father did not report that violation, make any attempt thereafter to locate the child, or attempt to file a modification petition after his unsuccessful filing in Pennsylvania about six years after the mother left with the child (cf. Matter of John F. [John F., Jr.], 149 AD3d 1581, 1582 [4th Dept 2017]). Additionally, the father's assertion that he paid for the child's Medicare is unsupported by the record.
Moreover, petitioner's "alleged failure to give the father notice that the child was placed in foster care is also insufficient to demonstrate that" contact with the child was infeasible (Matter of Chartasia Delores H. [Charles H.], 88 AD3d 460, 460 [1st Dept 2011], lv denied 18 NY3d 803 [2012]). Even assuming, arguendo, that petitioner was required to do more than serve the father by publication with the neglect petition that resulted in the child's placement in foster care, we conclude that the father's lack of awareness of that petition was not the reason that the father failed to communicate with the child (see Matter of Annette B., 4 NY3d 509, 514-515 [2004], rearg denied 5 NY3d 783 [2005]). Indeed, even after the father was served with the termination petition, he failed to contact the child even though petitioner told him that he could write letters to the child. Although the father contacted the foster parents and spoke with petitioner about the petition, those minimal efforts do not preclude a finding of abandonment (see Matter of Miranda J. [Jeromy J.], 118 AD3d 1469, 1470 [4th Dept 2014]; Matter of Michael B., 284 AD2d 946, 946 [4th Dept 2001]; Matter of Elizabeth S., 275 AD2d 952, 953 [4th Dept 2000], lv denied 95 NY2d 769 [2000]).
Entered: June 12, 2020
Mark W. Bennett
Clerk of the Court