Matter of Syri'annah PP. (Sayyid PP.) (2023 NY Slip Op 00252)

Matter of Syri'annah PP. (Sayyid PP.)

2023 NY Slip Op 00252

Decided on January 19, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 19, 2023

533257
[*1]In the Matter of Syri'annah PP. and Another, Alleged to be Abandoned Children. Schenectady County Department of Social Services, Respondent; Sayyid PP., Appellant.

Calendar Date:December 14, 2022

Before:Egan Jr., J.P., Pritzker, Fisher and McShan, JJ.

Michelle I. Rosien, Philmont, for appellant.
Christopher H. Gardner, County Attorney, Schenectady (Michael R. Godlewski of counsel), for respondent.
Veronica Reed, Schenectady, attorney for the children.

Fisher, J.
Appeal from an order of the Family Court of Schenectady County (Kevin A. Burke, J.), entered April 7, 2021, which, among other things, granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject children to be abandoned, and terminated respondent's parental rights.
Respondent is the father of two children (born in 2012 and 2016). Both children resided with the mother until February 2019, when they were temporarily removed from her custody and placed in the care and custody of petitioner. Shortly thereafter, petitioner filed petitions alleging that the children were neglected by both parents.[FN1] Due to the removal and the neglect petition, a visitation schedule with the children was established for respondent and subsequently handled by a coordinator for a third-party supervised visitation program. In October 2019, after the mother entered an admission to a finding that she had neglected the children, and based upon the allegations by a caseworker that respondent had missed several scheduled visitations with the children over the prior six months, petitioner withdrew the neglect petition against respondent and filed the first abandonment petition against him.
Thereafter, respondent was discharged from the supervised visitation program and no further visits with the children were scheduled. In December 2019, respondent sought to resume visitation, which was opposed by petitioner and the former attorney for the children (hereinafter AFC). Family Court (Blanchfield, J.) issued a temporary order suspending visitation between respondent and the children, which ultimately became final after a hearing in January 2020. Although further hearings were scheduled, in March 2020 court proceedings were disrupted by the pandemic caused by the coronavirus known as COVID-19.
When proceedings resumed in July 2020, respondent filed several motions to return the children, to intervene in the neglect petition against the mother and to terminate the placement of the children. After the matter was reassigned, Family Court (Burke, J.) indicated an intention to "restart the action." On August 21, 2020, petitioner filed the second abandonment petition against respondent and sought to withdraw the first abandonment petition. After strenuous objection by respondent, Family Court granted such withdrawal but permitted respondent to incorporate, as part of his defense to the newly-filed abandonment proceeding, the relevant time period preceding the filing of the first abandonment proceeding.[FN2] Following a fact-finding hearing, Family Court adjudged the children to have been abandoned by respondent, terminated his parental rights and committed guardianship and custody to petitioner. Respondent appeals.
Termination of parental rights on the ground of abandonment is authorized by Social Services Law § 384-b (4) (b). The salutary function of this section is to prevent children from "unnecessarily protracted stays" in foster [*2]care, while "assuring that the rights of the birth parent are protected . . . [and,] where positive, nurturing parent-child relationships no longer exist, furthering the best interests, needs, and rights of the child[ren] by terminating parental rights and freeing the child[ren] for adoption" (Social Services Law § 384-b [1] [b]). To that end, "[a] finding of abandonment is warranted when it is established by clear and convincing evidence that, during the six-month period immediately prior to the date of the filing of the petition, a parent evinces an intent to forego his or her parental rights as manifested by his or her failure to visit or communicate with the child or the petitioner, although able to do so and not prevented or discouraged from doing so by that petitioner" (Matter of Jaxon UU. [Tammy I.—Nicole H.], 193 AD3d 1269, 1271 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]). "Once the petitioner establishes that a parent failed to maintain sufficient contact with a child for the statutory period of six months, the burden shifts to the parent to establish that he or she maintained sufficient contact, was unable to do so, or was discouraged or prevented from doing so by the petitioner" (Matter of Joseph D. [Joseph PP.], 193 AD3d 1290, 1291 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]).
Here, petitioner failed to establish by clear and convincing evidence that respondent evinced an intent to forego his parental rights (see Matter of Khavonye FF. [Latasha EE.], 198 AD3d 1134, 1136-1137 [3d Dept 2021]; see also Matter of Mason H. [Joseph H.], 31 NY3d 1109, 1110 [2018]). The record demonstrates that respondent filed numerous motions to resume visitation, return his children, intervene in the neglect proceeding against the mother and terminate the children's placement. During at least one appearance, respondent remarked that he would continue to "battle" for the return of his children, even prompting Family Court to candidly admit that respondent has been an active participant during the entire proceeding (see Matter of Grace E.W.-F. [Zanovia W.], 205 AD3d 812, 813 [2d Dept 2022], lvs denied 39 NY3d 901 [2022]). Respondent had several visits with the children where he inquired if he could obtain their school records and asked what clothing or supplies they needed. The record further reflects that respondent made several inquiries to the caseworker and the mother, including during the delay caused by the pandemic.
Although the caseworker disputes the communication efforts made by respondent,[FN3] particularly during the six months prior to the filing of the second abandonment petition, the record further demonstrates that petitioner has acted in a manner that has prevented or discouraged respondent's ability to visit and communicate with the children. There are several troubling instances in the record where the caseworker or the coordinator cancelled respondent's scheduled visitation with [*3]the children due to his late confirmation of the scheduled visit or arrival — including one egregious incident where respondent was three minutes late to confirm an appointment for later that day.[FN4]
 Respondent contends that his employment imposed inherent difficulties for him to confirm the appointments pursuant to the coordinator's self-imposed deadline, including due to cell phone use restrictions at work and a lack of cellular service at the job site, but that the caseworker and the coordinator refused to consider his requests for additional time or accommodations to confirm the visits. The appellate AFC echoes this argument, adding that petitioner knew that respondent worked during the time he was required to confirm his visits but that the caseworker and the coordinator refused to accommodate his reasonable requests to extend the window he had to confirm the visits, which were scheduled to occur several hours later.
Notwithstanding the fact that respondent cancelled one visit due to illness, attended five visits and had seven visits cancelled on him in the foregoing manner, the caseworker then reported to Family Court that respondent had only attended 4 out of 20 scheduled visits. Based on the incorrect information presented by the caseworker — who relied on text messages from the coordinator, who did not testify at the hearing — petitioner was successful in obtaining an order suspending respondent's visitation with the children in December 2019, thereby making it more difficult for respondent to visit and communicate with the children. Upon our review of the record, we further recognize respondent's growing frustration with petitioner's conduct, combined with the chilling effects of the pandemic (see generally Matter of Nelson UU. v Carmen VV., 202 AD3d 1414, 1416 [3d Dept 2022])and the kinship placement with the maternal grandmother, who notably did not have an amicable relationship with respondent. Accordingly, under the circumstances presented in the record, we find that Family Court should have dismissed the petition as petitioner failed to carry its heavy burden (see Matter of Mason H. [Joseph H.], 31 NY3d at 1110; Matter of Khavonye FF. [Latasha EE.], 198 AD3d at 1137; see also Matter of Jaxon UU. [Tammy I.—Nicole H.], 193 AD3d at 1271; Matter of Joseph D. [Joseph PP.], 193 AD3d at 1291).
Egan Jr., J.P., Pritzker and McShan, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, and petition dismissed.

Footnotes

Footnote 1: As it relates to respondent, who did not live with the mother and the children, the neglect petition alleged that respondent knew or should have known that the mother was abusing marihuana, was not attending mental health treatment, did not secure safe and stable housing, maintained deplorable conditions with no working heat in freezing temperatures and had a history of leaving the children alone and without proper supervision, but that respondent had failed to intervene or protect the children.

Footnote 2: At oral argument, petitioner's counsel incorrectly presented the relevant time period as only consisting of the six months before the filing of the second abandonment proceeding.

Footnote 3: There are several instances in the record where the caseworker gave conflicting or factually inaccurate testimony.

Footnote 4:The record also reflects that respondent was charged with a no call/no show for the visit scheduled on August 30, 2019, however, this date was changed by the coordinator who did not communicate the new date to respondent — despite respondent sending unanswered inquiries about the next scheduled visitation date.