Matter of Abel J.R. (Estilia R.) (2023 NY Slip Op 05139)

Matter of Abel J.R. (Estilia R.)

2023 NY Slip Op 05139

Decided on October 11, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 11, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
VALERIE BRATHWAITE NELSON
JOSEPH J. MALTESE
LINDA CHRISTOPHER, JJ.

2021-04568
 (Docket No. B-1230-20)

[*1]In the Matter of Abel J. R. (Anonymous). Westchester County Department of Social Services, respondent; 
and
Estilia R. (Anonymous), appellant.

Irene J. Goldsmith, White Plains, NY, for appellant.
John M. Nonna, County Attorney, White Plains, NY (Jason S. Whitehead of counsel), for respondent.
Steven Ranellone, White Plains, NY, attorney for the child.

DECISION & ORDER
In a proceeding pursuant to Social Services Law § 384-b, the mother appeals from an order of fact-finding and disposition of the Family Court, Westchester County (Michelle I. Schauer, J.), dated October 15, 2021. The order of fact-finding and disposition, insofar as appealed from, upon an amended order of the same court dated July 2, 2021, made after a fact-finding hearing, determined that the mother abandoned the subject child, terminated her parental rights, and transferred custody and guardianship of the child to the petitioner for the purpose of adoption. The appeal from the order of fact-finding and disposition brings up for review the amended order dated July 2, 2021.
ORDERED that on the Court's own motion, the notice of appeal from the amended order dated July 2, 2021, is deemed to be a premature notice of appeal from the order of fact-finding and disposition dated October 15, 2021 (see CPLR 5520[c]); and it is further,
ORDERED that the order of fact-finding and disposition dated October 15, 2021, is affirmed insofar as appealed from, without costs or disbursements.
The subject child, Abel J. R., was born in January 2018. Eight days after his birth, the child was removed from the care of the respondent, Estilia R. (hereinafter the mother), and placed in a foster home with one of his siblings who is not a subject of this proceeding. In a May 2018 order, the Family Court determined that the mother had neglected the child and, among other things, directed the mother to cooperate with supervision by the petitioner, the Westchester County Department of Social Services, cooperate with anger management and domestic violence counseling, complete a parenting program, and submit to random toxicologies. In January 2019, the court suspended the mother's parental access with the child.
On February 4, 2020, the petitioner commenced this proceeding pursuant to Social Services Law § 384-b, inter alia, to terminate the mother's parental rights on the ground of abandonment, alleging, among other things, that the mother evinced her intention to forego her [*2]parental rights and obligations for the period of six months immediately prior to the commencement of the proceeding, which was from approximately August 2019 through February 2020 (hereinafter the statutory abandonment period). At the fact-finding hearing, the mother sought to present evidence through cross-examination of the petitioner's witnesses and through her own testimony that the petitioner had prevented and discouraged her from visiting and communicating with the child and from communicating with the petitioner from September 2016, the time her older children who were not subjects of this proceeding were first removed from her custody, or at least from January 2018, when the subject child was removed from her care. The Family Court ruled that the mother's attorney should "pretty much" limit his questions to the statutory abandonment period.
Following the fact-finding hearing, the Family Court determined that the mother had abandoned the child. The court, among other things, terminated the mother's parental rights and transferred custody and guardianship of the child to the petitioner for the purpose of adoption. The mother appeals.
Termination of parental rights is authorized by Social Services Law § 384-b(4)(b) when a parent abandons a child for a period of six months immediately prior to the date of the filing of the petition. Pursuant to Social Services Law § 384-b(5)(a), "a child is 'abandoned' by his [or her] parent if such parent evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency." Abandonment must be proven by clear and convincing evidence (see Matter of Annette B., 4 NY3d 509, 514). "Once the petitioning agency establishes that the parent failed to maintain contact with his or her child, the burden shifts to the parent to prove an inability to maintain contact or that he or she was prevented or discouraged from doing so by the . . . agency" (Matter of Kylee I.C. [Thomas C.], 213 AD3d 659, 660 [internal quotation marks omitted]).
Here, the Family Court properly determined that the petitioner established, by clear and convincing evidence, that the mother abandoned the child during the six-month period immediately preceding the filing of the petition (see Matter of Ishmael J.L.T.M. [Terry K.], 194 AD3d 1060; Matter of Darrell H. [Darrell D.H.], 189 AD3d 1235; Matter of Nyshawn R.V.S. [Erica M.V.], 145 AD3d 902; Matter of Tinisha J. [William J.], 135 AD3d 760). Both Jane Okereke, a supervisor of case work with the petitioner, and Maria Gongora, a caseworker with the petitioner who was assigned to this case beginning in October 2019, testified that the mother was angry with the petitioner and that she was not willing to work with them. Okereke and Gongora further testified that the mother's calls and visits to the petitioner's office were primarily limited to requesting MetroCards, ostensibly for the purpose of attending court-ordered anger management classes (see Matter of Joshua M. [Brittany N.], 167 AD3d 1268, 1271). However, Gongora testified that the mother should have completed the anger management classes in a few months and that it took the mother two years to complete them. Contrary to the contention of our dissenting colleague, the testimony regarding the length of time that the mother took to complete anger management classes was relevant to the court's determination not to credit the mother's testimony regarding the frequency and nature of her contacts with the petitioner, including her alleged reason for requesting the MetroCards.
Significantly, both Gongora and Okereke testified that during the mother's calls and visits to the petitioner's office, she never asked about the child (see Matter of Anton T.H. [Troy A.H.], 212 AD3d 618, 619; Matter of Myla-Ray L. [Ryan L.], 195 AD3d 1024, 1024; Matter of Micah L. [Rachel L.], 192 AD3d 1344, 1345; Matter of Maricel J.S. [Alex S.], 181 AD3d 804, 805). In addition, the mother did not provide letters, gifts, or cards for the child during the statutory abandonment period (see Matter of Anton T.H. [Troy A.H.], 212 AD3d at 619; Matter of Myla-Ray L. [Ryan L.], 195 AD3d at 1024; Matter of Micah L. [Rachel L.], 192 AD3d at 1345).
Although the mother did attend a service plan review meeting for the child in January 2020, the meeting had to be adjourned because the mother became aggressive (see Matter of Bradyen ZZ. [Robert A.], 216 AD3d 1229). Okereke testified that the mother called her names, including [*3]"liar" and "bitch," and was disruptive. Okereke further testified that during the service plan meeting, the mother complained about the foster parents and "blamed everybody," but the mother did not ask how the child was doing (see Matter of Myla-Ray L. [Ryan L.], 195 AD3d at 1024; Matter of Micah L. [Rachel L.], 192 AD3d at 1345; Matter of Maricel J.S. [Alex S.], 181 AD3d at 805).
In all, the evidence adduced at the hearing established that the mother's contact with the petitioner was too minimal, sporadic, and insubstantial to overcome a finding of abandonment (see Matter of Kylee I.C. [Thomas C.], 213 AD3d at 660; Matter of Anton T.H. [Troy A.H.], 212 AD3d at 620; Matter of Myla-Ray L. [Ryan L.], 195 AD3d at 1024; Matter of Morgan A.H. [Ta-Mirra J.H.], 172 AD3d 861, 862; Matter of "Baby Boy" N. [Albert N.], 163 AD3d 570, 572).
Moreover, the mother failed to demonstrate that the petitioner prevented or discouraged her from communicating with it or with the child, or that she was otherwise unable to do so (see Matter of Kylee I.C. [Thomas C.], 213 AD3d at 661). The mother's contention that the petitioner prevented her from communicating with the child by suspending her parental access is without merit, as it was the Family Court that suspended the mother's parental access with the child, not the petitioner. Further, the mother was still obligated to maintain contact with the petitioner, which had legal custody of the child, even though the court had suspended her parental access (see Matter of "Baby Boy" N. [Albert N.], 163 AD3d 570, 572; Matter of Alexandryia M.M.B. [Heather C.], 132 AD3d 664, 664).
As to the mother's contention that the petitioner discouraged her from communicating with it, the mother acknowledged during her testimony that she did not call anyone at the petitioner's office to ask about the child during the statutory abandonment period. Although the mother testified that she did not ask about the child because she "knew" that the petitioner would not provide any information about him and would give her "the cold shoulder," the Family Court was not required to credit this testimony (see Matter of Richard JJ. [Jennifer II.], __ AD3d __, 2023 NY Slip Op 03738 [3d Dept]). Credibility determinations of the Family Court should be accorded deference, as it was in "the best position to evaluate the character and sincerity of the witnesses" (Matter of Myla-Ray L. [Ryan L.], 195 AD3d at 1024). We note that the mother's repeated disruptive outbursts during the hearing also supported the court's determination not to credit the mother's testimony.
Contrary to the mother's contention and the contention of our dissenting colleague, the Family Court's ruling relating to the petitioner's alleged discouragement prior to the statutory abandonment period did not prevent the mother from establishing that her failure to communicate with the child or with the petitioner was due to the petitioner's discouragement (see Matter of Alexa Ray R., 276 AD2d 703, 704). Initially, the court did not definitively limit the mother to presenting evidence of the petitioner's alleged discouragement during the statutory abandonment period only, regardless of how the mother's attorney may have interpreted that ruling or reconfigured his examination strategy. The challenged ruling occurred after the mother's attorney argued that the petitioner's discouragement of the mother went back to September 2016, when the mother's older children were first removed from her custody, or at least to January 2018, when the subject child was born. The court held that it was not relitigating the termination of the mother's parental rights with respect to the older children. In that context, the court told the mother's attorney that he was "pretty much" prohibited from asking questions that preceded the statutory abandonment period and stated that "we're certainly not going back to . . . the time that the older children were removed from her care in 2016." The court then directed the mother's attorney to "stick to the petition" and "move on." In any event, despite the challenged ruling, the mother was not precluded during her direct case from presenting evidence, such as returned letters, to demonstrate the petitioner's alleged discouragement either before or during the statutory abandonment period. Nevertheless, the mother presented no such evidence.
Although our dissenting colleague points to instances where the Family Court sustained objections to questions relating to a time outside of the statutory abandonment period, in other instances, objections to such testimony were overruled. Despite the challenged ruling, the mother testified repeatedly that she did not ask about the child because the petitioner had discouraged her from doing so by giving her the "cold shoulder" and failing to provide her with information about the child or addressing her concerns about him. The mother testified that some [*4]of this alleged discouragement occurred prior to the statutory abandonment period. The mother also testified that she did not send gifts for the child during the statutory abandonment period because, shortly after the child was born, the petitioner had allegedly returned clothing and "stuff" that the mother had provided for him. The court was thus presented with evidence that the petitioner's alleged conduct prior to the statutory abandonment period discouraged the mother from communicating with the petitioner during the statutory abandonment period.
Further, we respectfully disagree with our dissenting colleague that any error in the challenged ruling requires reversal or "contravened the fundamental fairness of the proceeding." The alleged additional evidence proffered by the mother, even if credited, would not have risen to the level of agency discouragement or prevention of contact (see Matter of Alyssa A. [Michelle N.-Sandra N.], 79 AD3d 740, 742; Matter of Lisa Marie F., 110 AD2d 993, 993; see generally Matter of Alexa Ray R., 276 AD2d at 704; Matter of Chaka F., 220 AD2d 310, 310). In addition, the mother testified that Lisa Alexander, a caseworker with the petitioner who was assigned to the mother's case prior to —and for approximately the first two months of—the statutory abandonment period, tried to help her. Nonetheless, the mother did not testify that she asked Alexander for information about the child or raised her concerns about the child with Alexander. The mother's failure to do so belies her claim of discouragement both before and during the statutory abandonment period (see generally Matter of Annette B., 4 NY3d at 514-515; Matter of Aniya P. [Imani B.], 67 AD3d 434, 435; cf. Matter of Grace E. W.-F. [Zanovia W.], 205 AD3d 812, 813). Thus, assuming arguendo that the additional testimony regarding the petitioner's alleged discouragement prior to the statutory abandonment period was relevant and should have been admitted (see generally Matter of Xena X., 279 AD2d 691, 692), under the circumstances of this case, any error in the Family Court's ruling was harmless (see generally Matter of Angel P. [Evelyn C.-Keith G.], 137 AD3d 793, 795).
CONNOLLY, J.P., MALTESE, and CHRISTOPHER, JJ., concur.
BRATHWAITE NELSON, J., dissents, and votes to reverse the order of fact-finding and disposition dated October 15, 2021, insofar as appealed from, on the facts and in the exercise of discretion, and remit the matter to the Family Court, Westchester County, for a new fact-finding hearing and a new determination thereafter, with the following memorandum:
In this proceeding to terminate the mother's parental rights on the ground of abandonment, the mother, who had been precluded from visiting with the subject child, asserted that her conduct during the statutory abandonment period did not evince an intent to abandon the child because the petitioner had prevented and discouraged her from maintaining contact with the child and with the petitioner. The Family Court erroneously ruled that the mother could not present evidence regarding events that occurred prior to the statutory abandonment period and erroneously precluded the mother from eliciting such evidence on cross-examination of the petitioner's witnesses and during her own testimony. The court's incorrect ruling infringed upon the mother's right to present evidence regarding the central issue in the proceeding. Considering the fundamental interest at stake, I would reverse and remit the matter for a new fact-finding hearing. Therefore, I respectfully dissent.
The child was born in January 2018, and shortly thereafter was removed from the mother's care. On February 4, 2020, the petitioner commenced this proceeding pursuant to Social Services Law § 384-b, inter alia, to terminate the mother's parental rights. The petitioner sought to terminate the mother's parental rights on the ground of abandonment, not permanent neglect. Thus, any delay by the mother in completing anger management classes was not relevant to the Family Court's determination on the question of whether the child was abandoned, and the petitioner was not obligated to demonstrate diligent efforts to encourage and strengthen the parental relationship (see Matter of Gabrielle HH., 1 NY3d 549, 550; Matter of Julius P., 63 NY2d 477, 481; compare Social Services Law § 384-b[5] with Social Services Law § 384-b[7]).
"A biological parent has a right to the care and custody of a child, superior to that of others, unless the parent has abandoned that right or is proven unfit to assume the duties and privileges of parenthood" (Matter of Michael B., 80 NY2d 299, 309; see Social Services Law § 384-[*5]b[1][a][iii]). "Those rights are among our oldest and most fundamental and are not only provided by statute, but also guaranteed to parents and children by our State and Federal Constitutions" (Matter of Jamie J. [Michelle E.C.], 30 NY3d 275, 280). "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence" (Santosky v Kramer, 455 US 745, 747-748).
Termination of parental rights on the ground of abandonment is authorized by Social Services Law § 384-b(4)(b) when a parent abandons a child for a period of six months immediately prior to the date of the filing of the petition. "[A] child is 'abandoned' by his [or her] parent if such parent evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency" (Social Services Law § 384-b[5][a] [emphasis added]). While the burden to maintain contact rests on the parent, the agency cannot prevent or discourage the parent from doing so and then claim abandonment (see id. § 384-b[5][b]; Matter of Gabrielle HH., 1 NY3d at 550; Matter of Julius P., 63 NY2d at 481).
Here, the mother contended that the petitioner had discouraged her from visiting with the child and communicating with the child and with the petitioner from the time that the child was removed from her care. During the fact-finding hearing, the mother sought to elicit testimony concerning incidents that occurred after the child was taken from her care and prior to the statutory abandonment period in order to establish that the petitioner "continually stonewalled" her, and "ignored, dismissed, [and] minimized all of her concerns," such that "[i]t was pointless to reach out to the [petitioner] during the abandonment period." Counsel for the mother argued that the petitioner strategically commenced the abandonment proceeding at a time when "the contacts were minimal after [the mother] got the message the hard way . . . after 18 months of discouragement" following the child's birth.
The majority's assertion that the mother sought to present evidence relating to events that occurred from September 2016 and with respect to her other children is not accurate. The Family Court's ruling and the arguments in relation thereto arose out of a question regarding a supervised visit on June 19, 2018. The petitioner's first witness at the fact-finding hearing was caseworker Maria Gongora. On cross-examination, the first line of questioning by counsel for the mother was to ask Gongora about her supervision of family visits that occurred in June 2018, and specifically asked about the visit on June 19, 2018. Counsel for the petitioner and counsel for the child immediately objected on the ground that it related to events prior to the statutory abandonment period, which began in August 2019. Counsel for the mother stated that the petitioner's discouragement of the mother "goes back to probably when her [older] children were first removed from her custody . . . [and] certainly during the entirety of [the subject child's] life, and we can't simply limit the [petitioner's] discouragement of [the mother] to the abandonment period because that's convenient for [the petitioner]." Counsel explained that he sought to elicit testimony about the discouragement that the mother received "at least since [the subject child] was born" in order to explain why the mother "felt it was completely useless to reach out to the [petitioner] at all during the abandonment period." Counsel for the petitioner and counsel for the child continued their objections, asserting that anything outside of the "statutor[y] time limit . . . from August 2019 to February 4th, 2020" was not relevant. Counsel for the child asserted that they would not relitigate the determination with respect to the other children. In response, counsel for the mother made clear that he was not seeking to relitigate any other determination, and that his position was that the petitioner's discouragement of the mother since the child was born was relevant to the determination of whether or not the mother abandoned him. The record clearly reflects that counsel's specific question related to the June 19, 2018 visit, and that he did not seek to present evidence relating to the other children or from any time predating the subject child's birth.
Counsel for the mother provided caselaw supporting his position. Counsel for the petitioner argued that the caselaw was distinguishable, and steadfastly sought to prevent testimony concerning any events prior to August 2019. The Family Court concluded that the caselaw was inapplicable and directed counsel for the mother to "move on" in his cross-examination of the witness. Counsel sought clarification on the court's ruling, asking "So, just for—the Court's not going to let me ask any question that precedes the abandonment period?," and the court replied, [*6]"Correct." Counsel repeated, "I'm limited from August 1st basically of 2019 to February 4th of 2020?," and the court replied, "pretty much, we're certainly not going back to . . . 2016." Counsel again clarified that his intent was to elicit testimony of discouragement only since the child was born. Counsel for the petitioner again objected to any testimony outside of the statutory abandonment period, and argued that the statute limited the evidence to the statutory abandonment period. Counsel for the mother again asserted that there had been "18 months of discouragement" following the child's birth, during which the mother raised numerous concerns, which were all ignored, dismissed, or minimized by the petitioner, and that such evidence was relevant to the question of whether the mother abandoned the child. The court stated that counsel's position was not supported by the facts of this case and directed counsel again to "move on."
Counsel again attempted to clarify his position, and ultimately stated that if he was not going to be allowed to ask any questions about the time prior to the statutory abandonment period, he would need a few moments to reconfigure his examination outlines, because everything that he had intended to ask related to the period prior to the statutory abandonment period. Following more back and forth between counsel for the mother and counsel for the petitioner on the issue of whether events preceding August 2019 were relevant, the Family Court directed counsel for the mother to "stick to the petition." Counsel again asked, "Okay, so I'm just clarifying I'm not allowed to ask questions beyond August 2019." At this point the court seemingly ignored counsel, as no oral response from the court appears on the record. Counsel then requested a few moments to reconfigure his presentation.
The petitioner's second witness was supervising caseworker Jane Okereke. At the beginning of his cross-examination of Okereke, counsel for the mother requested a recess and to return in a few hours because, among other things, he needed to "redo" his cross-examination outline since he was limited "to the abandonment period only." The Family Court stated, "Okay," and granted the recess. At the close of the petitioner's case, counsel for the mother moved to dismiss the petition based upon a failure to state a case. At that time, counsel for the mother observed that he had been precluded from questioning the petitioner's witnesses about the period of time preceding the statutory abandonment period.
During direct examination of the mother, counsel limited his questions to the period between "August 1st, 2019, and February 4th, 2020." Nonetheless, counsel for the petitioner objected or moved to strike testimony several times when she mistakenly thought that the question referred to a time period prior to the statutory abandonment period.
Following the fact-finding hearing, the Family Court determined that the mother had abandoned the child. The court rejected the mother's claim that the petitioner had discouraged her, finding that her assertions in that regard were conclusory and not supported by any evidence. Based upon the evidence presented at the fact-finding hearing, the court determined that the petitioner did not prevent or discourage the mother from communicating with the petitioner or planning for the child [id.]. The court thereafter terminated the mother's parental rights and transferred custody and guardianship of the child to the petitioner for the purpose of adoption.
"A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is . . . a commanding one" (Lassiter v Department of Social Servs. of Durham Cty., 452 US 18, 27). "The parent's interest in the liberty of the child, in his [or her] care and in his [or her] control, has long been recognized as a fundamental interest [that] may not be curtailed by the state without a meaningful opportunity to be heard" (Matter of Ella B., 30 NY2d 352, 356 n 3; see Matter of Amira W.H. [Tamara T.H.], 182 AD3d 547, 548; Matter of Tyrell M., 283 AD2d 500, 501). "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State . . . When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures" (Santosky v Kramer, 455 US at 753-754).
Here, the Family Court improperly prevented the mother from eliciting testimony to [*7]establish that the petitioner discouraged her from visiting with the child and from communicating with the child and with the petitioner prior to the six-month period preceding the filing of the petition. Although it is the parent's conduct during the period of abandonment, i.e., the six months preceding the filing of the petition, that is determinative in an abandonment proceeding (see Social Services Law § 384-b[4][b]), the statute does not preclude consideration of evidence outside of that period. Evidence concerning events outside of that six-month period may be relevant to the court's determination of whether the parent evinced an intent to forego parental rights. Courts have recognized that evidence of a parent's conduct outside of the statutory abandonment period may be relevant to assessing parental intent (see Matter of Annette B., 4 NY3d 509, 514-515; Matter of Grace E.W.-F. [Zanovia W.], 205 AD3d 812, 813; Matter of Aniya P. [Imani B.], 67 AD3d 434, 435). Similarly, evidence of the agency's conduct outside of the statutory abandonment period also may be relevant to assessing parental intent (see Matter of Xena X., 279 AD2d 691, 692). Indeed, it has been acknowledged that "because the child is already in agency custody, the State even has the power to shape the historical events that form the basis for termination" (Santosky v Kramer, 455 US at 763).
The mother contends that her conduct during the statutory abandonment period was shaped by and the result of the petitioner's conduct in the eighteen months prior thereto, during which she alleges that the petitioner, inter alia, returned clothing and other items that she had sent to the child, and, after her parental access with the child was suspended, failed to respond to her questions and concerns regarding the care of the child. The mother was permitted to testify generally that she did not communicate with the petitioner during the statutory abandonment period regarding the child's care because she had already been discouraged from calling or "ask[ing] about anything," and that she, therefore, relied upon the visits of her sister and mother with the child to obtain information about his care and well-being. However, the Family Court's ruling prevented her from testifying as to the specific incidents of discouragement that preceded the statutory abandonment period, or from cross-examining the petitioner's witnesses about such incidents. Notably, the court rejected the mother's claim that the petitioner had discouraged her upon determining that her assertions were conclusory and not supported by any evidence, and yet the court had prevented her from testifying about such discouragement and from eliciting such evidence on cross-examination of the petitioner's witnesses.
The majority's contention that the Family Court did not "definitively limit" the mother to the statutory abandonment period and that the ruling did not prevent her from eliciting evidence about the petitioner's discouragement from outside of that time period is inaccurate and clearly contradicted by the record. As noted, the record establishes that the court's ruling occurred after counsel for the mother asked a specific question about a visit on July 19, 2018. During the lengthy discussion that followed the objection to that specific question, counsel repeatedly clarified that the questions he had planned to ask related to the period of time following the subject child's birth and did not relate to the other children. The court specifically ruled that counsel was not permitted to ask any question about incidents preceding the statutory abandonment period, and that his questions would be limited to the period from August 1, 2019, to February 4, 2020. The record reflects that, in an effort to comply with the court's definitive ruling, counsel took time to reconfigure his presentation of the mother's case and that thereafter his questions were explicitly framed as limited to the statutory abandonment period—August 1, 2019, to February 4, 2020. The majority's assertion that counsel for the mother misinterpreted the court's ruling is contrary to the clear record evidence. In this regard, the undisputed record includes the lengthy colloquy on the issue, the court's definitive ruling, and several objections by counsel for the petitioner on the ground that the question asked or testimony given referred to a time prior to the statutory abandonment period, reflecting her understanding of the court's definitive ruling on the issue. Further, the court never adjusted its ruling despite counsel's repeated references to it.
The majority suggests that counsel for the mother was able to ask questions about the time prior to the statutory abandonment period, but it cites to one instance where the mother testified that she raised concerns "a little before and during" the statutory abandonment period, and one instance where her counsel asked whether she sent any gifts "[d]uring the abandonment period of August 1st, 2019, to February 4th, 2020," to which the mother replied that she did not because she previously had sent items and they were returned to her. That the mother was able to make a couple [*8]of generalized statements regarding the petitioner's conduct was no substitute for being able to elicit evidence concerning specific incidents, and for being able to question the petitioner's witnesses about such incidents. The majority's suggestion that, despite the Family Court's definitive ruling precluding such testimony, the mother nonetheless could have submitted physical evidence from before the statutory abandonment period, such as returned letters, which foundationally would have required supporting testimony concerning that period of time, is speculative. The record demonstrates that the mother was unable to present the evidence that she had intended to present and that her attorney was constrained to frame his questions so as to refer only to the statutory abandonment period, which fundamentally restricted his presentation of the mother's case.
The Family Court's ruling, which prevented the mother from establishing that her alleged failure to communicate with the child or with the petitioner was due to the petitioner's discouragement, contravened the "fundamental fairness" of the proceeding (Matter of Leon RR, 48 NY2d 117, 124), and warrants reversal and remittal for a new fact-finding hearing at which the mother should be allowed to present evidence of the petitioner's discouragement, including during the period of time preceding the statutory abandonment period (see Matter of Dustin H., 40 AD3d 995, 996).
Accordingly, I would reverse and remit the matter to the Family Court, Westchester County, for a new fact-finding hearing and a new determination thereafter.

2021-04568 DECISION & ORDER ON MOTION
In the Matter of Abel J. R. (Anonymous).
Westchester County Department of Social Services,
respondent; Estilia R. (Anonymous), appellant.
(Docket No. B-1230-20)

Motion by the appellant on an appeal from an order of fact-finding and disposition of the Family Court, Westchester County, dated October 15, 2021, to strike stated portions of the respondent's brief on the ground that they refer to matter dehors the record. By decision and order on motion dated January 11, 2023, the motion was held in abeyance and referred to the panel of Justices hearing the appeal for determination upon the argument or submission thereof.
Upon the papers filed in support of the motion and the papers filed in opposition thereto, and upon the submission of the appeal, it is
ORDERED that the motion is denied.
CONNOLLY, J.P., BRATHWAITE NELSON, MALTESE and CHRISTOPHER, JJ., concur.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court