Matter of Ciara FF. (Robert FF.) (2025 NY Slip Op 01030)

Matter of Ciara FF. (Robert FF.)

2025 NY Slip Op 01030

Decided on February 20, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 20, 2025

CV-24-0392
[*1]In the Matter of Ciara FF., Alleged to be an Abandoned Child. Schenectady County Department of Social Services, Respondent; Robert FF., Appellant.

Calendar Date:January 15, 2025

Before:Egan Jr., J.P., Aarons, Fisher, McShan and Mackey, JJ.

Sandra M. Colatosti, Albany, for appellant.
Christopher H. Gardner, County Attorney, Schenectady (Dylan J. Reilly of counsel), for respondent.
Jessica H. Vinson, Delmar, attorney for the child.

Fisher, J.
Appeal from an order of the Family Court of Schenectady County (Mark Blanchfield, J.), entered January 30, 2024, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be abandoned, and terminated respondent's parental rights.
Respondent (hereinafter the father) is the father of the subject child (born in 2013). The child resided with the mother until August 2016, when the child was removed and placed with the child's maternal grandmother. The father last visited with the child at the child's fifth birthday in 2018, and then began a term of incarceration in April 2019. While the father was still incarcerated, in March 2021, the child was removed from the custody of the grandmother and placed in the care and custody of petitioner. In June 2023, petitioner commenced this abandonment proceeding seeking to terminate the father's parental rights to the child, who had been in foster care with petitioner for more than two years. The father was released from incarceration in November 2023, and, following a fact-finding hearing, Family Court granted petitioner's application and terminated the father's parental rights. The father appeals.
We affirm. "[A] finding of abandonment is warranted when it is established by clear and convincing evidence that, during the six-month period immediately prior to the date of the filing of the petition, a parent evinces an intent to forego his or her parental rights as manifested by his or her failure to visit or communicate with the child or the petitioner, although able to do so and not prevented or discouraged from doing so by that petitioner" (Matter of Syri'annah PP. [Sayyid PP.], 212 AD3d 1005, 1007 [3d Dept 2023] [internal quotation marks and citations omitted]). Once it is established that a parent failed to maintain sufficient contact with a child for the statutory period of six months, "the burden shifts to the parent to establish that he or she maintained sufficient contact, was unable to do so, or was discouraged or prevented from doing so by the petitioner" (Matter of Jaxon UU. [Tammy I.-Nicole H.], 193 AD3d 1269, 1271 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]). "Parents are presumed able to visit and communicate with their children and, although incarcerated parents may be unable to visit, they are still presumed able to communicate with their children absent proof to the contrary" (Matter of Mason H. [Joseph H.], 31 NY3d 1109, 1110 [2018] [citations omitted]). In the context of an abandonment proceeding, "the agency is under no obligation to exercise diligent efforts to encourage a parent to establish a relationship with his or her child" (Matter of Joseph D. [Joseph PP.], 193 AD3d 1290, 1291 [3d Dept 2021] [internal quotation marks and citation omitted]; see Social Services Law § 384-b [5] [b]).
Here, the father concedes that petitioner met its burden of establishing that he did not visit or communicate [*2]with the child or petitioner during the relevant six-month period. However, he contends that Family Court erred in finding that he did not meet his corresponding burden of showing that petitioner prevented him from doing so. Specifically, he contends that petitioner failed to apprise him of the child's whereabouts or facilitate such contact between him and the child. We disagree. The record reveals that, although the father may have missed one letter sent to him by petitioner due to his transfer to a different correctional facility, he received the first letter that contained a mailing address and two phone numbers that he could have used to obtain the information he sought. The caseworker testified that the father never contacted her or petitioner during the alleged abandonment period, and that she had last heard from him during a phone call that she initiated in March 2021. It was also established that, after this last conversation with the caseworker, the father was in communication with the mother and his niece, both of whom were themselves in contact with petitioner — the niece apparently on the father's behalf on at least one occasion — demonstrating that the father could both obtain the child's whereabouts through other means and freely communicate despite his incarceration.
Although it is true that petitioner did not inform the father of the child's whereabouts during the relevant time period, it did inform him of the neglect proceedings and that the child was in foster care. Nonetheless, and contrary to the father's contentions, petitioner was under no obligation to make any diligent efforts to encourage the father to communicate with the child in the abandonment context (see Matter of Kamariana SS. [Anthony SS.], 227 AD3d 1166, 1167 [3d Dept 2024], lv denied 42 NY3d 903 [2024]; Matter of Joseph D. [Joseph PP.], 193 AD3d at 1291). To the extent that the appellate attorney for the child contends that petitioner failed to properly serve the father with notice of the permanency hearings, when considering that the father testified he had last seen the child approximately a year before he was incarcerated — over five years before the abandonment petition was filed — petitioner's failure, "while inexcusable, was not in fact the reason he failed to communicate with his [child]" (Matter of Annette B., 4 NY3d 509, 514 [2005]; see Matter of Chartasia Delores H. [Charles H.], 88 AD3d 460, 460 [1st Dept 2011], lv denied 18 NY3d 803 [2012]).Based on the foregoing and our review of the remaining record, which does not reveal any refusal or interference by petitioner frustrating an attempt by the father to visit or communicate with the child, we conclude that the father failed to rebut petitioner's showing of abandonment and there is no basis upon which to disturb Family Court's adjudication (see Matter of Annette B., 4 NY3d at 514-515; Matter of Kamariana SS. [Anthony SS.], 227 AD3d at 1168; Matter of Taj'ier W. [Joseph W.], 209 AD3d 1203, 1205 [3d Dept [*3]2022]; Matter of Damien D. [Ronald D.], 176 AD3d 1411, 1413 [3d Dept 2019]; compare Matter of Xena X., 279 AD2d 691, 692 [3d Dept 2001]). We have examined the father's remaining contentions and have found them to be without merit.
Egan Jr., J.P., Aarons, McShan and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.